UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK
------------------------------------------------------X
EXIM GRAIN TRADE B.V.,                :

              Plaintiff,                :

    - against -                                :

J.K. INTERNATIONAL PTY LTD.,          :

              Defendant.                :
------------------------------------------------------X



08 Civ. _____
ECF CASE

AUG 05 2008
U.S.D.C. S.D.N.Y.
CASHIERS

## VERIFIED COMPLAINT

Plaintiff, EXIM GRAIN TRADE B.V. (hereinafter referred to as "Plaintiff"), by and through its attorneys, Tisdale Law Offices LLC, as and for its Verified Complaint against the Defendant, J.K. INTERNATIONAL PTY LTD. (hereinafter referred to as "Defendant"), alleges, upon information and belief, as follows:

1. This is an admiralty and maritime claim within the meaning of Rule 9(h) of the Federal Rules of Civil Procedure and 28 United States Code § 1333.

2. At all times material to this action, Plaintiff was, and still is, a foreign company duly organized and operating under foreign law with a principal place of business in The Netherlands.

3. Upon information and belief, Defendant was, and still is, a foreign corporation or other business entity organized under and existing by virtue of foreign law with a place of business in Australia.

4. By contract dated October 11, 2006 (hereinafter "the Contract"), the Sellers, Plaintiff, agreed to sell and the Buyers, Defendant, agreed to buy a quantity of 50,000mt wheat ±

5% at vessel's option at contract price of Russian Milling wheat for USD 185.59 per metric ton. *See Ital-Bras S.r.L. Contract 6.025/06 Contract as Exhibit 1.*

5.  After Defendant failed, on three occasions, to nominate an appropriate vessel for carriage of the 50,000 mt of milling wheat, and after Plaintiff had already sustained heavy losses, Plaintiff had no other option but to accept the nomination of the M/V ULCAS.

6.  Subsequently, the quantity of 40,280.00 mt of milling wheat was loaded onto the M/V ULCAS with no consideration of the balance of 12,220.00 mt of milling wheat.

7.  Plaintiff consequently was forced to pay storage fees for the non-shipped cargo and mitigate its losses by making arrangements to sell the remaining 12,200 mt of milling wheat.

8.  Because Plaintiff was obligated to sell the remaining wheat to mitigate its damages, the wheat sold for substantially less than in the Contract, specifically the difference between 185 USD – 165 USD. The total difference in price of the milling wheat totals $244,400.00

9.  In addition, Plaintiff suffered further damages arising from storing the wheat before it could be sold, totaling $777,192.00.

10. Finally, as a result of the defendant's wrongful failure to nominate a vessel for the unfulfilled quantity in breach of its maritime obligation, Plaintiff has suffered damages in the total principal sum of $1,021,592.00. *See Claim Submissions of the Sellers attached as Exhibit 2.*

11. Pursuant to the arbitration clause of the contract, any disputes arising thereunder shall be referred to Arbitration in London with English law to apply.

12. Arbitration in this matter is pending in London. The parties have made their respective submissions and are awaiting the Tribunal's decision.

13. Interest, costs and attorneys' fees are routinely awarded to the prevailing party in London Arbitration proceedings. As best as can now be estimated, Plaintiff expects to recover the following amounts:

| | | |
|---|---|---:|
| A. | Principal claim: | $1,021,592.00 |
| B. | Estimated interest on claims:<br>3 years at 7.0% | $ 236,675.75 |
| C. | Estimated fees and costs: | $250,000.00 |
| **Total** | | **$1,508,267.70** |

14. The Defendant cannot be found within this District within the meaning of Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims of the Federal Rules of Civil Procedure, but, upon information and belief, Defendant has, or will have during the pendency of this action, assets within this District and subject to the jurisdiction of this Court, held in the hands of garnishees within the District which are believed to be due and owing to the Defendant.

15. The Plaintiff seeks an order from this court directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, and also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching, *inter alia*, any property of the Defendant held by any garnishees within the District for the purpose of obtaining personal jurisdiction over the Defendant, to compel arbitration and to secure the Plaintiff's claim as described above.

**WHEREFORE**, Plaintiff prays:

A. That process in due form of law issue against the Defendant, citing it to appear and answer under oath all and singular the matters alleged in the Complaint, failing which default judgment be entered against it in the sum of **$1,508,267.70.**

B.  That since the Defendant cannot be found within this District pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, this Court issue an Order directing the Clerk of Court to issue Process of Maritime Attachment and Garnishment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims, also pursuant to the United States Arbitration Act, 9 U.S.C. §§ 1 and 8, attaching all goods, chattels, credits, letters of credit, bills of lading, effects, debts and monies, tangible or intangible, or any other funds up to the amount of **$1,508,267.70** belonging to, due or being transferred to, from, or for the benefit of the Defendant, including but not limited to such property as may be held, received or transferred in Defendant's name or as may be held, received or transferred for its benefit at, moving through, or within the possession, custody or control of banking/financial institutions and/or other institutions or such other garnishee(s) to be named, and that all persons claiming any interest in the same be cited to appear and pursuant to Supplemental Admiralty Rule B answer the matters alleged in the Complaint;

C.  That pursuant to 9 U.S.C. §§201 et seq. this Court recognize and confirm any London arbitration award in Plaintiff's favor against the Defendant as a judgment of this Court;

D.  That this Court award Plaintiff the attorneys' fees and costs incurred in this action; and

E.  That the Plaintiff have such other, further and different relief as the Court may deem just and proper.

Dated: August 5, 2008
New York, NY

The Plaintiff,
EXIM GRAIN TRADE B.V.,

By: /s/ L. Davies

Lauren C. Davies (LD 1980)
Thomas L. Tisdale (TT 5263)
TISDALE LAW OFFICES LLC
11 West 42nd Street, Suite 900
New York, NY 10036
(212) 354-0025 – phone
(212) 869-0067 – fax
ldavies@tisdale-law.com
ttisdale@tisdale-law.com

## ATTORNEY'S VERIFICATION

State of Connecticut  )
                      )  ss.:  City of Southport
County of Fairfield   )

1. My name is Lauren C. Davies.

2. I am over 18 years of age, of sound mind, capable of making this Verification, and fully competent to testify to all matters stated herein.

3. I am an Attorney in the firm of Tisdale Law Offices, LLC, attorneys for the Plaintiff.

4. I have read the foregoing Verified Complaint and know the contents thereof and believe the same to be true and accurate to the best of my knowledge, information and belief.

5. The reason why this Verification is being made by the deponent and not by the Plaintiff is that the Plaintiff is a business organization with no officers or directors now within this District.

6. The source of my knowledge and the grounds for my belief are the statements made, and the documents and information received from, the Plaintiff and agents and/or representatives of the Plaintiff.

7. I am authorized to make this Verification on behalf of the Plaintiff.

Dated:    August 5, 2008
          Southport, CT

_____
Lauren C. Davies

# EXHIBIT 1

**ITAL-BRAS s.r.l.**
(grains & commodities)

Milan, 11/10/06

## CONTRACT 6.025/06

SELLER: Exim Grain Trade B.V.
Reitseplein, 5 Postbus 90154
5000 LG Tilburg
The Netherlands

BUYER: J.K. INTERNATIONAL PTY LTD
49 Suscatand Street
ROCKLEA – QLD 4106
AUSTRALIA

GOODS: Russian Milling wheat, crop 2006

QUANTITY: 50.000 (fifty-thousands) metric tons, 5 pct more or less, at vessel's option at contract price

WEIGHT: Final at loading as per official weight certificate issued by first class superintendent company's certficates at Seller's choice and Seller's costs, weight-determination at loadport as per draft-survey

QUALITY: sound, loyal and merchantable, free from alive insects/weevils, final at loading as per official quality certificate issued by first class superintendent company's certficates at Seller's choice and Seller's costs

| | |
|---|---|
| Proteins | : min 11,5 pct |
| Test weight | : min 78 KG/HL, discounts 1:1, prorata, down to min 76 KG/HL |
| Wet gluten | : min 23 pct |
| Falling number | : min 220 sec. |
| W | : min 160 |
| Brokens & Splits | : max 4 pct |
| Bug Damaged | : max 2,00 pct, discounts 1:1, prorata, up to max 2,50 pct |
| Aflatoxin | : 10 ppb max @ 5 ppbB1 max |
| Moisture | : max 14 pct |
| Admixture | : max 2 pct |

PACKING: IN BULK, vessel bulk-carrier/single-decker

PRICE: 185,50 USD per metric ton

PARITY: FOB stowed and trimmed Novorossiysk
Sellers' agents at loading port

SHIPMENT: 19th October – 31st October, 2006 both dates included
Buyers to present the vessel for loading during October 19-22,2006 – no extension
Buyers/Owners are to provide Sellers/Sellers' agents at loading with vessel's 5/3 days arrival notices

EXIM GRAIN TRADE B.V.

20121 MILANO - Via Fatebenefratelli, 12 - ITALIA - Tel. 02.659.61.6-
Fax: 02.29003410-02.29004396-02.653021   E-mail: italbras@italbras.it   Konto: Banca di Roma n° 598135 - Milano

# ITAL-BRAS s.r.l.

(grains & commodities)

-2-

LOADING: at the rate of 7.000 metric tons per weather working day Saturdays, Sundays and Holidays excluded even if used. Time to count as of 08:00 Hrs the following business day after NOR tendered WIPON, WIBON, WIFPON, WICCON provided same tendered during official working hours. Case NOR tendered after official working hours, NOR to be considered tendered the next business day at 08:00 hours. Time from Friday 5 p.m. (or from 5 p.m. on day preceding holidays) until 8 p.m. on Monday (or 8 a.m. on next business day) shall not count even if used. Demurrage/despatch as per Charter Party. Calculation as per N.O.R. and S.O.F. both signed by master/shippers and ships' agents and sent by fax to Sellers and Buyers. Payment of demurrage/despatch, to be settled within 60 days from vessel's completion.

PAYMENT: Net cash against documents at Banque Nationale de Paris – Geneva's branch by telegrafic transfer to the sellers' account within two banking days against presentation

Sellers to provide following dox:
-signed commercial invoice
-3/3 clean on board B/Ls
-weight certificate issued by first class superintendent company's certficates at Seller's choice and Seller's costs
-quality certificate issued by first class superintendent company's certficates at Seller's choice and Seller's costs
-radioactivity certificate
-fumigation certificate if necessary
-health certificate certifying fit for human consumption issued first class superintendent company's certficates at Seller's choice and Seller's costs
-phytosanitary certificate issued in the country of origin by competent authorities
-certificate of origin issued in country of origin by competent authorities

OTHER TERMS/CONDITIONS: All export duties and/or taxes and or levies present and future are for sellers' account.
-All banking expenses in Buyers' bank to be for Buyers' account and in Sellers' bank to be for Sellers's account
-all other terms/conditions not in contradiction with the above as per GAFTA 49.
Arbitration as per GAFTA 125 in London.
COMMISSION: USD 0,50 x ton for sellers' account.

EXIM GRAIN TRADE B.V.

BUYERS:                    SELLERS:

BROKERS:

20121 MILANO - Via Parcisenefratelli, 12 - ITALIA - Tel. 02.659.61.66
Fax: 02.29003410-02.29004396-02.653021 - E-mail italbras@ital-bras.it - Konto: Banca di Roma n° 598135 - Milano

# EXHIBIT 2



IN THE MATTER OF A GAFTA ARBITRATION

BETWEEN:

EXIM GRAIN TRADE B.V.

Claimant
(SELLERS)

-AND-

J.K. INTERNATIONAL PTY Ltd.

Respondent
(BUYERS)

Contract No. 6.025/06 dated 11th October 2006

## CLAIM SUBMISSIONS OF THE SELLERS

By the present Claim Submissions the Sellers kindly request the Tribunal to order the Buyers to pay damages arising out of the Buyers' default for the unfulfilled quantity of goods.

### The Contract

1. By the Contract No. 6.025/06 dated 11th October 2006 (**Evidence 1** "The Contract no.6.025/06" to the Sellers' bundle) the Sellers, Exim Grain Trade B.V., agreed to sell and the Buyers, J.K. International PTY Ltd., agreed to buy, a quantity of 50 000 MT +/-5% at vessel's option at contract price of Russian Milling wheat for USD 185.50 per metric ton, FOB stowed and trimmed Novorossiysk with Sellers' agents at loading port.

2. The terms of the Contract more particularly relevant to the present dispute were:
"*QUANTITY:            50 000 MT +/-5% at vessel's option at contract price*



ASTAPOV LAWYERS

"WEIGHT:            Final at loading as per official weight certificate issued by first class superintendent company's certificates at Sellers' choice and Sellers' costs, weight-determination at loadport as per draft-survey."

"PRICE:             185,50 USD per metric tons."

"SHIPMENT:          19th October -31st October, 2006 both dates included. Buyers to present the vessel for loading during October 19-22, 2006 – no extension Buyers/Owners are to provide Sellers/Seller's agents at loading with vessel's 5/3 days arrival notices" [our emphasize].

"LOADING:           at the rate of 7,000 metric tons per weather working day, Saturday, Sunday and Holidays excluded even if used. Time to count as of 08:00 Hrs the following business day after NOR tendered WIPON, WIBON, WIFPON, WICCON provided same tendered during official working hors. Case NOR tendered after official working hours, NOR to be considered tendered the next business date at 08:00 hours. Time from Friday 5 p.m. (or from 5 p.m. on day preceding holidays) until 8 p.m. on Monday (or 8 p.m. on next business day) shall not count even if used. Demurrage/dispatch as per Charter Party. Calculation as per N.O.R. and S.O.F. both signed by master/shippers and ships' agents and sent by fax to Sellers and Buyers. Payment of demurrage/dispatch to be settled within 60 days from vessel's completion".

"ARBITRATION:       as per GAFTA 125 in London".

Relevant edition of GAFTA 49 is enclosed for your convenience (**Evidence 2** "GAFTA 49" to the Sellers' bundle).

**Facts**

3. When signing the Contract on the 11 October 2006, the Parties kept in mind the need to free the terminal of the goods within the shortest possible time. The Parties orally agreed that the Buyers would have taken the contractual lot with one vessel only.

4. Already on the 13th October 2006, the Buyers nominated M.V. "DELTA RANGER" with ETA Novorossiysk 19th October 2006. Since the loading capacity of the vessel was lesser than initially agreed by the Parties, the Sellers proposed to find another vessel suitable (**Evidence 3** "Correspondence on M.V. Delta Ranger" to the Sellers' bundle):

   " Reff. to your e-mail and our telecom pls be informed that the nominated m/v is totally unacceptable for us.
   Would like to draw your attention that as to our contract we are ready and have to load 50000mt.



*Kindly ask you to find another variant and to inform us asap."*

5. Such an offer was accepted by the Buyers without any objections. Buyers readily nominated another vessel M.V."NAN HAI" four days later. However, the nomination did not correspond to the time for vessel presentation for loading as per Contract, i.e. to 19-22 October 2006. Consequently, the Sellers had nothing but to reject such a nomination. (**Evidence 4** "Correspondence on M.V. "NAN HAI" to the Sellers' bundle). Again as in previous case the rejection has been made by agreement of the Parties without any objections.

6. Further on the same day on 17th October 2006, the Buyers nominated M.V. "INNOVATOR" with ETA 25th October 2006. Again, the Sellers could not accept such a nomination which was made in violation of the contractual time for vessel presentation. (**Evidence 5** "Correspondence on M.V. "INNOVATOR" to the Sellers' bundle).

7. On the 18th October 2006, the Buyers nominated M.V. "TUSCARORA BELLE" with ETA 22nd October 2006. The Sellers confirmed such a nomination if the vessel was to be presented within the Contract period. However, M.V. "TUSCARORA BELLE" failed to arrive in due time (**Evidence 6** "Correspondence on M.V. "TUSCARORA BELLE" to the Sellers bundle). Indeed the vessel never arrived at all.

8. After the expiration of the Contract time for vessel presentation, the Sellers in their letter addressed to the Buyers' agent summarized the critical situation regarding the Contract performance and urged to nominate the vessel ASAP (**Evidence 7** "Correspondence on contract execution" to the Sellers bundle):

*"The situation with the contract is getting critical. So I would like to provide you with my view on it.*

*On October 11, 2006 we signed contract for shipment 50 000 mt of MW, FOB Novorossiysk.*

*One of the main reasons, why we come into deal with you was your readiness to present the vessel in mutually agreed period.*

*More over than that you told me the Buyers have a vessel for 50000mt and gave the name m/v-Seaboolker.*

*Than you informed me that this vessel disappeared but confirmed your readiness to present the vessel for loading not later then October 22, 2006.*

*Today, on October 23, 2006 we have the following situation:*



- the vessel which you nominated and which was accepted by port silo authority – m/v Tuscarora Belle, neither arrived in due time, nor issued any 5 days NOR or 3 days NOR.
- we do not have any information from you which can clearify your intention on delivery. Your last message was nomination of m/v Tuscarora Belle on October 19.

As the capacity of Novorossiysk port silo is abt 120000mt of grain. On present moment port silo store 107 000 mt and our share is almost 50 000 mt. If we, as the owner of the Goods, fail to present the vessel in the beginning of our loading window, it will cause very heavy consequences both for us and for silo.
This situation is totally unacceptable for us.
Hope you do your best to improve it."

Surprisingly, for the first time (!) and after the failure to present the vessel within the Contract period, the Buyers' agent alleged that the first nomination was unlawfully rejected by the Sellers:

"If you look at the papers you will see that m/v Trade Ranger has been nominated for loading 19th October and you rejected the nomination because of quantity. This of course is contrary to GAFTA rules but your buyers did not notify you were in default. Then it was proposed to you two vessels one after the other for this contract and you again rejected..."

However, the Buyers' agent by their message confirm the true course of events: the nomination of MV Delta Ranger was abandoned by agreement of both Parties, therefore the Buyers did not notify the Sellers they were in default; and consequently, the Buyers made several other nominations which were lawfully rejected by the Sellers. Obviously, after making 3 subsequent nominations the Buyers have lost their right to rely on the alleged deficiency in legal entitlement to reject the first vessel by the Sellers.

9. Later on 23rd October 2006, the Buyers nominated M.V. "PROBO BEAR" with ETA 27th October 2006. Again the Sellers rejected such a nomination because of the uncontractual late ETA. For the numerous times the Sellers reminded Buyers that contractual period of vessel presentation was a condition of the Contract. The above period was included into the Contract to comply with the loading situation in Novorossiysk port, namely to complete loading within the loading quota (or so called loading window). (**Evidence 8** "Correspondence on M.V. "PROBO BEAR" to the Sellers' bundle).

10. Finally on the 24th October 2006, the Buyers nominated M.V. "ULCAS" with a late ETA. In the circumstances of heavy losses because of non-respect of the loading windows by the Buyers, the Sellers had no other option but to accept such a nomination. The Sellers accepted the late nomination under reservation of all rights



2 Shevkovychna str 1st floor
Kyiv 01008 Ukraine
Phone +38 (044) 253 14 54  253 79 03
Fax +38 (044) 253 68 31
e-mail office@astapovlawyers.com
www.astapovlawyers.com

and remedies arising out of the late vessel presentation and small carrying capacity of the vessel. The notice stated:

*...*

*Please also note that the vessel which you nominated is unable to take the whole contractual quantity and we have to reserve all our rights arising from this as well.*

*...*

(**Evidence 9** "Correspondence on M.V. "ULCAS" to the Sellers' bundle).

11. The quantity of 40,280.00 MT of milling wheat was loaded onto M.V. "ULCAS" (**Evidence 10** "Bills of Lading" to the Sellers' bundle).

12. Subsequently, the Buyers have ignored and made no efforts to arrange taking of the balance of the 12,220.00 MT of the Goods.

13. On the 29th of November 2006, the Sellers through their lawyers declared the Buyers in default for the unfulfilled quantity with notification on further claim for damages to be submitted. (**Evidence 11** "The letter from AstapovLawyers" to the Sellers' bundle).

14. Within the receipt of the above notice on default the Buyers kept silence and failed to offer any feasible option to resolve the situation amicably.

15. Sellers could not ignore the consequences of this improper performance of the Contract by Buyers, since they ought to pay storage fees for the above non-shipped amount of cargo. The expenses increased proportionally due to the time spent for storage. (**Evidence 12** "The Freight Forwarding Agreement No.N-10906" and "Invoice" to the Sellers' bundle). Therefore, the Sellers made all possible arrangements to sell the remained quantity and thus to mitigate the amount of losses.

16. On 4th December 2006, the Sellers have offered to purchase 12,220.00 MT of Russian milling wheat to several companies (**Evidence 13** "the Offer" to the Sellers' bundle).

17. On 6th December 2006, Claimants received a reply from a company that proposed its conditions of purchase, which were obviously disadvantageous to the Sellers' current position at that time, and a message from brokers confirming the impossibility to sell the milling wheat in question at the initial Contract price (**Evidence 14** "the Replies" to the Sellers' bundle). Subsequently on 12th December 2006, Sellers concluded the Contract for 12,220.00 MT of milling wheat FOB Novorossiysk with Soi Sabai Limited, who offered the most suitable price.(**Evidence 15** "The Contract with Soi Sabai Limited" to the Sellers' bundle).

18. Therefore on 25th December 2006 after sale against the defaulter, the Sellers referred the dispute to GAFTA arbitration and informed the Buyers on their intentions

This message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately.



2 Shovkovychna str, 1st floor
Kyiv 01008 Ukraine
Phone +38 (044) 253 14 34, 253 79 04
Fax +38 (044) 253 89 31
e-mail office@astapovlawyers.com
www.astapovlawyers.com

accordingly (Evidence 16 "The notice stating intention to refer the dispute to arbitration" to the Sellers' bundle).

Sellers' position

19. By failing to nominate vessel for the balance of the contractual tonnage within the contractual delivery period, the Buyers are in default for the unfulfilled quantity of 12,220.00 MT.

**I. Buyers failed to nominate the vessel in accordance with the Contract**

20. The shipment period stipulated in the Contract is an essential part of the present dispute. According to the wording of the Contract, the Buyers had to submit the vessel to be delivered until 31st October 2006. To succeed in doing so the Buyers had to nominate the vessel available for loading between 19th and 22nd of October 2006 inclusively. Necessity to adhere to the loading window at Novorossiysk port is a distinctive feature of trading in the region, of which both Parties were well cognizant. Naturally, it was a condition of the Contract that the vessel must comply with a contractually provided ETA of 19th – 22nd October 2006.

21. As it is obvious from the facts of the present dispute, the first nomination of M.V. "Delta Ranger" was abandoned by both parties. Indeed, bearing in mind the importance of taking the full cargo, the Sellers asked the Buyers to nominate another vessel. Such an offer was accepted by the Buyers, who nominated M.V. "NAN HAI" on 17th October 2006 although with late ETA. Thus, the first nomination was abandoned by agreement of both parties. Alternatively, the Sellers argue that the Buyers waived their right to rely on the first nomination by their conduct, namely by failing to object and by nominating another vessel.

22. The next nomination of M.V. "INNOVATOR" the Sellers rejected for the same reason of late ETA. Further, the Sellers accepted M.V. "TUSCARORA BELLE" with ETA 22nd October, however the vessel failed to arrive in due time. Again on 23rd October 2006, the Buyers nominated M.V. "PROBO BEAR" with late ETA, which the Sellers lawfully rejected. Lastly, notwithstanding heavy situation with contract performance, the Sellers had nothing but to accept nomination of M.V. "ULCAS" even though she could not load the full quantity of cargo.

23. No nomination was done in regard of the remained portion of 12,220.00 MT of the goods. Such a failure amounts to a breach of the above Contract for which the Buyers should be held liable.

24. For the clarity, the course of events regarding vessel nomination may be briefly summarized in the table as follows:

| Date of nomination | Vessel's name | ETA | Sellers' acceptance of nomination | Other remarks |
|---|---|---|---|---|

This message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately.



3 Shovkovychna str., 1st floor
Kyiv 01008 Ukraine
Phone +38 (044) 250 14 34  250 79 04
Fax +38 (044) 250 89 01
e-mail office@astapovlawyers.com
www.astapovlawyers.com

| 13th October 2006 | M.V. Delta Ranger | 19th October 2006 | abandoned by agreement of both Parties | Nomination abandoned by agreement between Sellers and Buyers. |
|---|---|---|---|---|
| 17th October 2006 | M.V. Nan Hai | 25th October 2006 | Rejected | Nomination rejected because of the late ETA |
| 17th October 2006 | M.V. Innovator | 25th October 2006 | Rejected | Nomination rejected because of the late ETA |
| 18th October 2006 | M.V. Tuscarora Belle | 22nd October 2006 | Accepted under condition of arrival within the contract loading time | Vessel failed to arrive |
| 23rd October 2006 | M.V. Probo Bear | 27th October 2006 | Rejected | Nomination rejected because of late ETA |
| 24th October 2006 | M.V. Ulcas | 26th October 2006 | Accepted | Nomination accepted under reservations: 40,280.00 MT of goods were loaded |
| no nomination | | | | Undelivered portion of the goods constitutes 12,220.00 MT |

## II. Damages calculation

25. As a consequence of the Buyers' poor contractual behavior, the Sellers have suffered substantial damages, for which the Buyers should be held liable.

26. In order to reduce damages subject to the Sct. 20 of the GAFTA 49, the Sellers after serving obligatory notice on the defaulter, have executed their contractual right and sold the rest of a cargo against the Buyers. Thus, such a sale should establish the default price.

27. In particular, on 12th December 2006 after several attempts the Sellers could re-sell the remaining milling wheat for USD 165.00 per metric tone, what was substantially less than in the Contract No. 6.025/06 between Exim Grain Trade B.V. and J.K. International Pty Ltd. The difference in price calculates as follows:

Difference in price per MT = USD 185 – USD 165 = USD 20

Total difference in price = 20 (difference in price) *12 220 (cargo quantity) = USD 244,400.00

28. In addition, the Sellers has suffered from additional expenses on storage arising out of the sec. 4.2.9. of the Freight Forwarding Agreement (**Evidence 12** "The Freight Forwarding Agreement No.N-10906" and "Invoice" to the Sellers' bundle). Storage calculation from 1st October 2006 amounts as follows:

This message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately



3 Shovkovychna str, 1st floor,
Kyiv, 01009, Ukraine
Phone +38 (044) 253 14 34, 253 79 04
Fax +38 (044) 253 99 31
e-mail: office@astapovlawyers.com
www.astapovlawyers.com

10 days of storage from 01.10.2006 till 10.10.2006 amounts to USD 24,440.00
10 days of storage from 11.10.2006 till 20.10.2006 amounts to USD 48,880.00
72 days of storage from 21.10.2006 till 31.01.2007 amounts to USD 703,872.00

Totally the sum for the storage services to be recovered is USD 777,192.00.

29. Thus, Exim Grain Trade, after taking all possible steps to mitigate the amount of damages, assesses them as follows:

USD 244,400.00 (difference in price) + USD 777,192.00 (storage expenses) = USD 1,021,592.00

## Conclusions

30. Based on the above we kindly ask the Tribunal:
    a) to order the Buyers to effect payment to the Sellers in respect of damages caused by the Buyers failure to nominate the vessel for the unfulfilled quantity, in amount of USD 1,021,592.00;
    b) to order the Buyers to effect the payment to the Sellers compound interest at the rate of 8 % with monthly shift as from the date when the debt has arisen until the actual date of payment;
    c) to order the Buyers to reimburse to the Sellers legal fees, the costs of arbitration and expenses of the Tribunal. The amount of legal fees will be confirmed by the Sellers at a later stage of this Arbitration.

## Annexes

1. Contract No. 6.025/06 dated 11th October 2006
2. GAFTA No. 49
3. The correspondence on M.V. Delta Ranger
4. The correspondence on M.V. Nan Hai
5. The correspondence on M.V. Innovator
6. The correspondence on M.V. Tuscarora Belle
7. The correspondence on Contract execution
8. The correspondence on M.V. Probo Bear
9. The correspondence on M.V. Ulcas
10. Bill of Lading No. 1,2,3,4, dd. 30 October 2006
11. The letter of AstapovLawyers dated 28th November 2006 – L-224/11/06
12. The Freight Forwarding Agreement No. N-10906 and Invoice
13. The Offer dated 4th December 2006

This message is confidential and for use by the addressee only and may be legally privileged. If this message is received by anyone other than the addressee, please destroy it and notify the sender immediately.

ASTAPOV INTERNATIONAL LAW GROUP
LAWYERS

3 Shovkovychna str. 1st floor
Kyiv 01008 Ukraine
Phone +38 (044) 252 14 34, 252 79 04
Fax +38 (044) 253 69 21
e-mail office@astapovlawyers.com
www.astapovlawyers.com

14. The Reply from Messrs. Grain Shipments Ltd. dated 6th December 2006; the Reply from Messrs. Comdaq Agricommodities B.V. dated 6th December 2006;
15. The Contract with Soi Sabai Limited of 12th December 2006
16. Notice of arbitration of 25th December 2006 – L-253/12/06

Dated this seventh day of December 2007

Andrey Y. Astapov
AstapovLawyers International Law Group
Attorneys for Claimants

This message is confidential and for use by the addressee only and may be legally privileged. If the message is received by anyone other than the addressee, please destroy it and notify the sender immediately.