BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
LeRoy Lambert (LL 3519)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

| | |
|---|---|
| EXIM GRAIN TRADE B.V., | 08 CIV 6989 (WHP) |
| Plaintiff, | |
| - against - | |
| J.K. INTERNATIONAL PTY LTD., | |
| Defendant. | |

## MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS

*Jeremy J.O. Harwood*
*LeRoy Lambert*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

# TABLE OF CONTENTS

INTRODUCTION..........................................................................................................1

THE BASIC FACTS....................................................................................................1

    A.    THE SALES CONTRACT.............................................................................1
    B.    THE NATURE OF THE DISPUTE UNDER THE SALES CONTRACT.....2

ARGUMENT ...............................................................................................................3

POINT I.......................................................................................................................3
ANY PERSON CLAIMING AN INTEREST IN IT SHALL BE ENTITLED TO A
PROMPT HEARING AT WHICH THE PLAINTIFF SHALL BE REQUIRED TO
SHOW WHY THE ARREST OR ATTACHMENT SHOULD NOT BE VACATED OR
OTHER RELIEF GRANTED CONSISTENT WITH THESE RULES..............................3

POINT II .....................................................................................................................4
NEITHER THE SALES CONTRACT NOR THE DISPUTES UNDER IT GIVE RISE
TO ADMIRALTY JURISDICTION…………………………………………………...4

    A.    THE APPLICABLE STANDARD FOR DETERMINING WHETHER A
          CLAIM IS MARITIME.................................................................................4

    B.    THE TEST AS STATED IN THE SECOND CIRCUIT.................................5
          1.  THRESHOLD INQUIRY.........................................................................5

    C.    THE SALES CONTRACT IS NOT A MARITIME CONTRACT ................7
          1.  THE COMPLAINT DOES NOT PASS THE THRESHOLD ..................7
          2.  THE SALES CONTRACT DOES NOT FIT WITHIN EITHER OF THE
              TWO EXCEPTIONS...............................................................................7

    D.    NOBLE RESOURCES V. YUGTRANZITSERVIS ET AL., 08 CV
          3876(LAP) ...................................................................................................11

CONCLUSION ...........................................................................................................13

900200.00001/6661568v.1

# TABLE OF AUTHORITIES

## FEDERAL CASES

*Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006)..................................................................................................................3

*Asoma Corp. v. SK Shipping Co.*, 467 F.3d 817, 2006 WL 3017982 (2d Cir. 2006)..................................................................................................................9

*Aston Agro-Industrial AG v. Star Grain Ltd.*, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y.)(Daniels, J.) .......................................................................................8

*Atlantic Mutual Insurance Co. v. Balfour Maclaine International Ltd.*, 968 F.2d 196 (2d Cir. 1992) .......................................................................................9

*C. Transport Panamax, Ltd. V. Kremikotzi Trade E.O.O.D [etc.]*, (S.D.N.Y. June 19, 2008) 2008 U.S. Dist. LEXIS 486885 ..................................4

*Exxon Corp. V. Central Gulf Lines, Inc.*, 500 U.S. 603, 111 S. Ct. 2071, 114 L. Ed. 2d 649 (1991)......................................................................................4

*F.H. Bertling Holding KG v. Ranhill Engineers & Construction SDN, BHD*, (S.D.N.Y. July 9, 2008) 2008 U.S. Dist. LEXIS 52085 ...........................5

*Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc.*, 413 F.3d 307 (2d Cir. 2005) ........................................................................................................5

*Foremost Insurance Co. v. Richardson*, 457 U.S. 668, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982)........................................................................................5

*French Republic v. Fahey*, 278 F.2d 947 (D.C. Md. 1922).......................................8

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 654 F.2d 1223, 1231-32 (5th Cir. 1985)…………………………………………………………………………8

*Luckenbach S.S. Co. v. Gano Moore Co.*, 298 Fed. 343, 344 (2d Cir. 1923) (L. Hand, J.), *rev'd in part on other grounds*, 298 Fed. 344 (2d Cir. 1924) ……....8

*Lucky-Goldstar International (America) Inc. v. Phibro Energy International, Ltd.*, 958 F.2d 58 (5th Cir. 1992) ...............................................7,8

*Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA*, 78 F. Supp. 2d 162
(S.D.N.Y. 1999)......................................................................................................4

*Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14, 125 S. Ct. 3385, 160
L. Ed. 2d 283 (2004)..............................................................................................4

*Salazar v. THE ATLANTIC SUN*, 881 F.2d 73 (3d Cir. 1989) .................................3

*Seaplus Line Co. v. Bulkhandling Handymax*, 409 F. Supp. 2d 316
(S.D.N.Y. 2005).....................................................................................................3

*Shanghai Sinom Import & Export v. Exfin (India)* 2006 AMC 2950
(S.D.N.Y. 2006 .....................................................................................................10

*Sisson v. Ruby*, 497 U.S. 358, 110 S. Ct. 2892, 111 L. Ed. 2d *292 (1990)*...............5

*Tangshan Shiajichenhui Iron & Steel v. Lords Polymer P VT Ltd., et al.,*
08-Civ-3576 (S.D.N.Y. 2008) ...........................................................................11

*Winter Storm Shipping Ltd. v. TPI*, 310 F.3d 263 (2d Cir. 2002).............................4

900200.00001/6661568v.1

## INTRODUCTION

Defendant J.K. INTERNATIONAL PTY LTD ("JKI") respectfully submits this memorandum of law in support of its emergency motion pursuant to Supplemental Rule E and F. R. Civ. P. Rule 12(b)(1) to dismiss the complaint and to vacate an order of maritime attachment and garnishment dated August 8, 2008 ("PMAG") obtained under Supplemental Rule B of the Supplemental Rules of F. R. Civ. P. for Certain Admiralty And Maritime Claims ("Supplemental Rules") obtained by Plaintiff Exim Grain Trade B.V. ("Exim") pursuant to which it has attached $1,508,267.70.

Exim's claim is based on a FOB sales contract to sell wheat, not a charter party to transport it. JKI respectfully submits that the Court lacks admiralty jurisdiction, as explained below. JKI has not moved by order to show cause for an emergency hearing to free its assets because Local Rule E.1, implementing Supplemental Rule E(4)(f)'s "prompt hearing" requirement, specifically provides for a hearing "within three (3) court days, unless otherwise ordered." JKI respectfully requests such an expedited hearing, especially given Exim's counsel's familiarity with this challenge to jurisdiction; an issue that it apparently did not raise with the Court in its ex parte application.

## THE BASIC FACTS

### A.    THE SALES CONTRACT

Exhibit 1 to the Complaint dated August 5, 2008 ("Complaint") is a document entitled "CONTRACT 6025/06" dated October 11, 2006 between Exim, defined as "Seller" and JKI as "Buyer" (the "Sales Contract"). Under the Sales Contract JKI

1

contracted to purchase and Exim contracted to sell "Russian milling wheat, crop 2006" in

a quantity of 50,000 metric tons, "5 percent more or less" at JKI's option.

Delivery of the grain was to be:

> FOB stowed and trimmed
> Novorossiysk

The definition of "FOB" at the named port of shipment, as set out in Incoterms

$2000^1$ is:

> "Free on Board" means that the seller delivers when the
> goods pass the ship's rail at the named port of shipment. This
> means that the buyer has to bear all costs and risks of loss of
> or damage to the goods from that point.   The FOB term
> requires the seller to clear the goods for export. This term can
> be used only for sea or inland waterway transport.  If the
> parties do not intend to deliver the goods across the ship's
> rail, the FCA term should be used.

## B.    THE NATURE OF THE DISPUTE UNDER THE SALES CONTRACT

Exhibit 2 to the Sales Contract is Exim's claim submission to the GAFTA tribunal

(the "GAFTA Claim").  It should be noted that a GAFTA arbitration, that is under the

arbitration rules of The Grain And Feed Trade Association, is not a maritime arbitration.

Exim claims that JKI loaded only 40,280 metric tons (Ex. 2, ¶ 11) and made "no efforts

to arrange taking of the balance of 12,220.00 MT of the goods" (Id., ¶ 12). Accordingly:

> . . . Sellers through their lawyers declared the Buyers in
> default for the unfulfilled quantity with notification on further
> claim for damages to be submitted …

Ex. 2, ¶ 13.

---

[1]     Available at www.iccwbo.org/incoterms.

Exim's principal claims are the difference in the Sales Contract price and its re-sell price (Id. ¶ 27) and for storage services (Id. ¶ 28).

## ARGUMENT

### POINT I

### PLAINTIFF CARRIES THE BURDEN TO SHOW WHY THE ATTACHMENTS SHOULD BE MAINTAINED; OTHERWISE THE COURT IS REQUIRED TO VACATE THE ATTACHMENTS

An order of maritime attachment and garnishment pursuant to Rule B is typically issued upon a minimal prima facie showing, usually made ex parte. See, e.g., Seaplus Line Co. v. Bulkhandling Handymax, 409 F. Supp.2d 316 (S.D.N.Y. 2005). Once property has been restrained:

> Any person claiming an interest in it shall be entitled to a prompt hearing at which *the plaintiff shall **be required to show why the arrest or attachment should not be vacated*** or other relief granted consistent with these rules.

Rule E(4)(f) (emphasis supplied).

The Second Circuit has found that Rule E(4)(f) is clear and the burden is on the plaintiff to show the attachment "was properly ordered and complied with the requirements of Rules B and E." Aqua Stoli Shipping Ltd. v Gardner Smith Pty. Ltd., 460 F.3d 434, 445 n.5 (2d Cir. 2006).[2]  Rule E does not specify what form the post-attachment hearing must follow and the nature and scope of the hearing depends entirely

---

[2]     To the extent the attachment is to be vacated on an equitable ground, however, the burden is on the defendant to establish any equitable grounds for vacatur. Id.

3

upon the issues in controversy. <u>Salazar v. THE ATLANTIC SUN</u>, 881 F.2d 73, 79 (3d

Cir. 1989).

"The absence of maritime jurisdiction would prove fatal to plaintiff's attachment."

<u>Maritima Petroleo e Engenharia Ltda v. Ocean Rig IA</u>, 78 F. Supp. 2d 162, 166

(S.D.N.Y. 1999). <u>See also</u>, <u>Winter Storm Shipping Ltd. v. TPI</u>, 310 F.3d 263, 268 (2d

Cir. 2002) (which held that in order to support the issuance of a maritime attachment,

"the plaintiff's claim must be one which will support a finding of admiralty jurisdiction

under 28 U.S.C. § 1333") (citation omitted).

Accordingly, the burden is now on Plaintiff to establish the Court's admiralty

jurisdiction to sustain the PMAG.

### POINT II

### NEITHER THE SALES CONTRACT NOR THE DISPUTES UNDER IT GIVE RISE TO ADMIRALTY JURISDICTION

### A. THE APPLICABLE STANDARD FOR DETERMINING WHETHER A CLAIM IS MARITIME

As summarized by Judge Preska in <u>C. Transport Panamax, Ltd. V. Kremikotzi</u>

<u>Trade E.O.O.D [etc.]</u>, (S.D.N.Y. June 19, 2008) 2008 U.S. Dist Lexis 48688*5:

> To determine whether a claim sounds in maritime, "courts
> should look to the subject matter of the [relevant] contract
> and determine whether the services performed under the
> contract are maritime in nature." *Exxon Corp. V. Central*
> *Gulf Lines, Inc.,* 500 U.S. 603, 612, 111 S. Ct. 2071, 114 L.
> Ed. 2d 649 (1991). This inquiry "depends upon . . . the nature
> and character of the contract, and the true criterion is whether
> it has reference to maritime service or maritime transactions."
> *Norfolk Southern Railway Co. v. Kirby,* 543 U.S. 14, 24, 125

4

900200.00001/6661568v.1

S. Ct. 3385, 160 L. Ed. 2d 283 (2004) (quotation marks omitted).

As stated in Exxon, 500 U.S. at 608:

> "The fundamental interest giving rise to maritime jurisdiction is 'the protection of maritime commerce.'" *quoting Sisson v. Ruby, 497 U.S. 358, 367, 110 S. Ct. 2892, 111 L. Ed. 2d 292 (1990); quoting Foremost Ins. Co. v. Richardson, 457 U.S. 668, 674, 102 S. Ct. 2654, 73 L. Ed. 2d 300 (1982).*

## B.    THE TEST AS STATED IN THE SECOND CIRCUIT

In F.H. Bertling Holding KG v. Ranhill Engineers & Construction SDN, BHD, 2008 U.S. Dist. LEXIS 52085 (S.D.N.Y. July 9, 2008) Judge Scheindlin carefully examined the applicable law to a motion to vacate for lack of maritime jurisdiction.

### 1.    Threshold Inquiry

Citing Folksamerica Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307, 312 (2d Cir. 2005), Judge Scheindlin set out the Second Circuit's threshold inquiry, based on the assumption that it survived the Supreme Court's decision in Kirby, supra, as follows:

> The threshold inquiry examines the subject matter of a dispute, as opposed to the underlying contract, to determine if "an issue related to maritime interests has been raised." A dispute will not give rise to maritime jurisdiction if "the subject matter of the dispute is so attenuated from the business of maritime commerce that it does not implicate the concerns underlying admiralty and maritime jurisdiction."
>
> *             *             *
>
> Traditionally, only "contracts, claims, and services *purely* maritime" were covered by federal maritime jurisdiction. Two exceptions to this rule allow maritime jurisdiction over contracts that combine both maritime and non-maritime elements: *first*, if the maritime elements of a contract are the

5

> principal or primary objective of the contract, and second, if
> "the claim arises from a breach of maritime obligations that
> are severable from the non-maritime obligations of the
> contract."

Id. at *13-14.

In applying the law to the logistics agreement ("Agreement") at issue the Court

held that "the nature of the dispute is sufficiently connected to maritime commerce to

pass the threshold" set by Folksamerica. Id. at *18. Next the Court held that because the

Agreement "contemplates land-based obligations as well as ocean-based ones, it is not a

purely maritime contract" so that maritime jurisdiction would only lie "under the

principal purpose or severability exception." Id. at *19. Although the Agreement

mentioned ocean shipping ("door to door freight forwarding") the Agreement did not

name, inter alia, ports of origin or destination, shipping dates or rates and specifically

reserved the buyer's shipping rights so that Bertling, the Rule B plaintiff, "might not be

in a position to arrange or charge for any shipping, oceanic or otherwise." Id. at *21.

The Court concluded:

> Because the Agreement specifically contemplates a situation
> in which Bertling is not involved in ocean shipping in any
> way, it does not have maritime commerce as its principal
> purpose. . . . Its principal purpose is not maritime commerce,
> but rather logistical support for the specified construction
> projects.
>
> The Logistics Agreement does not fit within the severability
> exception because it creates no maritime obligations that
> might be severed from other land-based obligations. Further,
> because the Agreement lists no allotments or percentages of
> ocean shipping that Bertling is bound to perform, nor any
> separate shipping rates or charges, any maritime obligations

6

> that the Agreement may have created cannot be clearly
> separated from the land-based obligations.

Id. at * 21.

## C.   THE SALES CONTRACT IS NOT A MARITIME CONTRACT

### 1.   The Complaint Does Not Pass The Threshold

Despite artful pleading in the Complaint to give it a "salty" flavor, the "subject matter of the dispute" has no connection to maritime commerce. As set forth in Exim's GAFTA Claim, the subject matter of the dispute is JKI's alleged wrongful failure to take "the balance of 12,220.00 mt of the Goods." Ex. 2, ¶ 12. Exim's claims are for the price difference and land storage.

Moreover, given that the sales' terms were "FOB," Exim (unlike Bertling) was never "in a position to arrange or charge for any shipping, oceanic or otherwise."

### 2.   The Sales Contract Does Not Fit Within Either Of The Two Exceptions

#### a.   The "Principal Or Primary Objective" Of The Sales Contract Was The Sale And Purchase Of Russian Grain

The Sales Contract's primary objective was the sale of goods and not their transportation by sea.  The notion that a sales contract becomes "maritime" simply because there is a sale of goods that are to be transported by sea has been consistently rejected. In Lucky-Goldstar Int'l (America) Inc. v. Phibro Energy International, Ltd., 958 F.2d 58, 59 (5th Cir. 1992) the Court stated that it was "beyond civil" that "a principal purpose of the contract was the land-based sale of over a thousand metric tons of toluene." It continued:

> "[i]t is well-established that such a sale of goods by itself
> would not be "maritime" merely because the seller agrees to

7

ship the goods by sea to the buyer.); Armour & Co. v. Fort Morgan Steamship Co., 270 U.S. 253, 259, 1926 AMC 327, 331 (1926) ("The original contract to purchase, assemble, and sell the cattle, to charter vessels and therein transport the cattle to Jacksonville, and the agreement of compromise, are not maritime contracts"); Laredo Offshore Constructors, Inc. v. Hunt Oil Co., 654 F.2d 1223, 1231-32 (5th Cir. 1985) ("It is fundamental that the mere inclusion of maritime obligations in a mixed contract does not, without more, bring non-maritime obligations within the pale of admiralty law"); Luckenbach S.S. Co. v. Gano Moore Co., 298 Fed. 343, 344, (2d Cir. 1923) (L. Hand, J.), rev'd in part on other grounds, 298 Fed. 344 (2d Cir. 1924). ("Nor is it possible to treat a contract of sale as maritime even though its performance involves the carriage of goods on the seas to the place of delivery. . . . In such matters, the whole contract must be maritime in its character, and, when the performance is partly maritime and partly terrene, a court of admiralty will not assume jurisdiction over it, unless the nonmaritime features be inconsiderable.")

958 F.2d at 59.

See also French Republic v. Fahey, 278 F.2d 947, 948 (D.C. Md. 1922) ("The circumstance that the buyer wanted the grain transported by water did not alter the essential nature of the agreement.")

The undisputed principal purpose of the Sales Contract was the sale and purchase of wheat. The Sales Contract is not a maritime contract within the meaning of Rule B.

The issue of whether the breach of a sales contract would support a Rule B attachment has been recently addressed by several Judges sitting within the Southern District of New York.

In Aston Agro-Industrial AG v. Star Grain Ltd., 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y.)(Daniels, J.), the Court considered two contracts for the sale of Russian wheat that "specified that delivery would be made by ship" and that provided "clauses relating

8

to the conditions under which the shipment and unloading of the wheat should occur." Aston, as seller entered into separate charter parties for two vessels to carry and deliver the wheat to Star Grain in Egypt. The wheat was damaged and Star Grain demanded cash payment for the damage. The vessels were delayed for two months until the ship owners paid Star Grain. Star Grain refused to pay Aston for the "demurrage" for the vessels' delay. In the ensuing GAFTA arbitration the tribunal found Star Grain liable for demurrage under the sales contracts. Aston filed its Rule B action to satisfy the GAFTA award. Judge Daniels held:

> In this case, the contracts are not maritime contracts because their primary objective was not the transportation of goods by sea. Instead, **their primary objective was, undoubtably (sic.), the sale of wheat**. That the wheat was transported on a ship does not make the contracts maritime contracts any more than it would make them aviation contracts had the wheat been shipping via airplane. Nor were they contracts between a seller and a shipper. In fact, Aston entered into two separate charter parties to accomplish the shipment of the wheat, and it was the primary maritime objective of those contracts to transport the wheat by sea. Thus, the charter parties between the seller and the shipper, like the bills of lading in <u>Kirby</u>, are maritime contracts, <u>see</u>, <u>e.g</u>. <u>Asoma Corp. v. SK Shipping Co.</u>, 467 F.3d 817, 2006 WL 3017982 *5 (2d Cir. 2006) ("Charter parties and bills of lading are interpreted using the ordinary principles of maritime contract law."). The contracts for the sale of wheat are not.

<u>Id</u>. at *9-10. (emphasis added)

Judge Daniels continued in respect of the exception, claimed by Aston:

> Here, invoking the first exception, Aston contends that maritime jurisdiction exists because the particular claims at issue involve only the maritime portions of the contracts. The contracts create no maritime obligations on Star Grain, however, let alone any maritime obligations that are severable

9

> from the non-maritime obligations. Rather, Star Grain's only
> obligations under the contracts were to pay the agreed-upon
> price pursuant to the stipulated payment terms, and to begin
> discharging the wheat when the ships arrived in port even if
> the ships arrived before the bills of lading were received.
> There is nothing uniquely maritime about these obligations
> necessitating "a neutral federal forum and uniform body of
> law to adjudicate rights and liabilities as they relate[] to the
> trafficking of sea-faring vessels." Atlantic Mut. Ins. Co. v.
> Balfour Maclaine Int'l Ltd., 968 F.2d 196, 200 (2d Cir. 1992)
> . . . . Rather, all that was required in adjudicating the
> underlying claims here was the straight-forward interpretation
> of contracts for the sale of goods.

Id. at *13.

In a decision also interpreting a similar contract, Judge Lynch found no maritime

jurisdiction over a claim for the non-delivery of iron ore shipped from India to China in

Shanghai Sinom Import & Export v. Exfin (India), 2006 AMC 2950, 2951-2952

(S.D.N.Y. 2006):

> Suffice to say, that plaintiff has sued because it did not
> receive the goods, or all of them, in a timely manner, and it
> seeks various items of damages for such nondelivery.
>
> On this record, both common sense and long-established case
> law suggest that this is a nonmaritime dispute between a
> purchaser and seller over the alleged failure to deliver
> purchased goods. I note that the dispute has no connection to
> the United States whatsoever, and there is apparently no basis
> for in personam jurisdiction over the defendant in this court
> or for subject matter jurisdiction in the federal courts on any
> nonadmiralty basis. This case is only here because of the
> liberal provisions for attachment and in rem jurisdiction in
> admiralty cases.
>
> *      *      *
>
> What we have here is a contract of the sort perfectly familiar
> long before the advent of container ships and integrated
> transportation systems. The purchase of goods by a buyer in

10

> one country from a seller in another, with a proviso that the goods are to be sent by sea, and with some incidental provisions bearing on the nature of that shipment, the alleged breach here was a breach wholly of the sale of goods provisions of the contract, not of its incidental maritime aspects, or indeed, of any transportation aspect at all. There is thus no basis in this case for maritime jurisdiction.

(emphasis added)

Recently, Judge Crotty also vacated an order of attachment on the basis that the underlying sales contract did not give rise to a maritime claim. Tangshan Shiajichenhui Iron & Steel v. Lords Polymer P VT Ltd., et al., 08-Civ-3576, Docket Entry # 15. Appendix A.

Just like the contracts involved in Aston, Shanghai Sinom and Tangshan, there is nothing maritime about the claims asserted by the Plaintiff in the GAFTA arbitration. The claim is nothing more than an alleged breach of a contract to purchase Russian Milling Wheat on FOB terms . If the CIF term contract in Aston is not maritime, then the FOB Sales Contract here cannot be, either.

## D.  NOBLE RESOURCES V. YUGTRANZITSERVIS ET AL., 08 CV 3876(LAP)

Judge Preska's ruling at oral argument on July 23, 2008 (Appendix B hereto) involved a similar challenge to admiralty jurisdiction in respect of a Rule B complaint filed by Exim's counsel. The underlying contract was for the sale and purchase of 25,000 metric tons of Russian milling wheat and a guarantee agreement in respect of that sales contract. As alleged by Noble (in its brief dated July 22, 2008, page 5):

> More importantly, the breaches that are alleged by Noble in its Rule B application, relate specifically to the maritime

11

portions of the contract. Noble is seeking security for losses suffered as a result of YTS's failure to load the Vessel after its nomination was approved. Additional damages were sought for wasted vessel expense including bunkering costs, port and survey costs and hire payments.

Judge Preska, in finding that the sales contract was maritime giving rise to the

Court's admiralty jurisdiction, held:

> Here, the contract itself makes clear that maritime transportation was integral to the agreement. For example, the contract provided that Plaintiff Noble would purchase a cargo from YTS and the contract set out in great detail the conditions for transportation and delivery.
>
> \*    \*    \*
>
> In addition, the dispute between the parties also touches upon the maritime commerce. As set out in plaintiff's claim submissions in the arbitration, and perhaps more importantly as reflected in the award, the dispute centered on two issues. First, the default by YTS in failing to provide a berth for the vessel after she had tendered her notice of readiness and refusal to load the vessel constituting a default under the contract. And, secondly, a request for wasted vessel costs, that is, the costs incurred by the vessel following tendering of her notice of readiness.
>
> \*    \*    \*
>
> For all those reasons, I find that the contract and dispute at issue fall within the Court's maritime jurisdiction.

Appendix B, p. 2-4.

Judge Preska's ruling is the subject of a pending motion for reconsideration that has yet to be fully briefed. The decision is contrary to Judge Daniel's ruling on a similar sales contract in <u>Aston</u> where the claim was for vessel demurrage. Maritime transport is not "integral" when the Seller expressly contracts for FOB terms not to have anything to

12

do with the transportation of the cargo. Nor are the claims in the GAFTA arbitration anything to do with a vessel but for failure to "arrange taking of the balance" of the cargo. Complaint, Ex. 2, ¶ 12.

Noble is contrary to a body of authority and distinguishable on its facts.

## CONCLUSION

Defendant respectfully requests that the Court order that the PMAG be vacated and the Complaint dismissed for lack of admiralty jurisdiction and for such other relief as is fair and equitable and as requested herein.

Date:    New York, New York
         August 14, 2008

Respectfully submitted,

BLANK ROME LLP

By: _____
     Jeremy J.O. Harwood
     405 Lexington Avenue
     New York, New York 10174
     (212) 885-5000

*Attorneys for Defendant*

13

# APPENDIX A

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

-------------------------------------------------------- X

TANGSHAN SHIAJICHENHUI IRON AND
STEEL PRODUCTS CO. LTD.,

                                        *Plaintiff,*

      - against -

LORDS POLYMER (I) PVT. LTD.; BLUE FLEET
MANAGEMENT COMPANY LTD.; BLUE FLEET
CHARTERING S.A.; and BELINDA BLUE
OCEAN INC.,

                                        *Defendants,*

-------------------------------------------------------- X

**08 Civ. 3576 (PAC)**

**ORDER and JUDGMENT**

      **WHEREAS**, defendant Lords Polymer (I) Pvt., Ltd., brought      by Order to Show Cause

dated May 13, 2008, a motion seeking an order vacating the process of maritime attachment and

garnishment (hereinafter "PMAG") against it, in favour of plaintiff Tangshan Shiajichenhui Iron

and Steel Products Co., Ltd.; and

      **WHEREAS**, the parties had an opportunity to fully brief the issues raised in the motion;

and

      **WHEREAS**, the Court heard oral argument of the motion on May 19, 2008; and

      **WHEREAS**, following oral argument and after consideration of the papers filed in

relation to the motion and upon all prior pleadings filed in the matter, the Court ruled that the

dispute between plaintiff Tangshan Shiajichenhui Iron and Steel Products Co., Ltd., and

defendant Lords Polymer (I) Pvt., Ltd., was not cognizable under the Court's admiralty and

maritime jurisdiction.

      **NOW, THEREFORE**, it is hereby:

**ORDERED** that the PMAG issued pursuant to the Court's Order dated April 15, 2008, is vacated as to defendant Lords Polymer (I) Pvt., Ltd.; and it is further

**ORDERED** that any and all goods, chattels, credits, letters of credit, bills of lading, debts, effects and monies, funds, wire transfers, accounts, electronic fund transfers, freights, sub-freights, charter hire, sub-charter hire, or any other tangible or intangible property being held or restrained by or on account of the PMAG are to be released forthwith and wired in accordance with their original instructions or in accordance with instructions received from Lords Polymer (I) Pvt., Ltd., as conveyed by its counsel; and it is further

**ORDERED** that this matter be discontinued with prejudice and without costs as to Lords Polymer (I) Pvt., Ltd.; and it is further

**ORDERED** that this Order shall have no effect upon any other defendant not specifically named in this Order and Judgment.

Dated: New York, New York
        May 20 , . 2008

SO ORDERED:

_____
U.S.D.J.                    Date

# APPENDIX B

87N6NOBC

1

87N6NOBL
1  UNITED STATES DISTRICT COURT
1  SOUTHERN DISTRICT OF NEW YORK
2  ------------------------------x
2
3  NOBLE RESOURCES,
3
4              Plaintiff,
4
5         v.                          08 CV 3876(LAP)
5
6  YUGTRANZITSERVIS and
6  SILVERSTONE,
7
7              Defendants.
8
8  ------------------------------x
9                                     New York, N.Y.
9                                     July 23, 2008
10                                    9:45 a.m.
10
11  Before:
11
12              HON. LORETTA A. PRESKA,
12
13                                    District Judge
13
14                    APPEARANCES
14
15  TISDALE LAW OFFICES, LLC
15       Attorneys for Plaintiff
16  BY:  CLAURISSE OROZCO
16
17  CHALOS & CO.
17       Attorneys for Defendants
18  BY:  GEORGE M. CHALOS
18
19
20
21
22
23
24
25

                SOUTHERN DISTRICT REPORTERS, P.C.
                       (212) 805-0300

□                                                              2

87N6NOBL
1              (Case called; in open court)
2
3              THE COURT:  Counsel have very graciously agreed to
4  prepare their papers quickly so that the hearing required to be
5  conducted quickly on a motion to vacate a maritime attachment
6  could take place promptly.  I am grateful to counsel for doing
7  that.
8              Defendant argues first that the contract at issue is
9  not subject to maritime jurisdiction.  We all agree to the law
10  which is that the threshold inquiry examines the subject matter
11  of dispute as opposed to the underlying contract.  To determine
12  if an issue related to maritime interests has been raised, an
13  issue will not give rise to maritime jurisdiction if the
14  subject matter of the dispute is so attenuated from the
                          Page 1

87N6NOBC

20   maritime jurisdiction. As the Court has set out recently in C
21   Transport Panamax, Ltd. v. Kremikovtzi Trade, et al., 07 CR 893
22   (June 19, 2008 S.D.N.Y.) courts in this circuit and elsewhere
23   have long held that an agreement to act as a surety on a
24   maritime contract is not maritime in nature. They have
25   recognized that the same is not true of an agreement to

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

5

87N6NOBL

1    guarantee the performance of a maritime contract.
2              See e.g. Compagnie Francaise, DE Navigational Avapeur
3    v. Bonnase, 19 F.2d 777, 779 (2d Cir. 1927) (L. Hand, J).
4              Here the guarantee by Silverstone specifically states
5    "The guarantor (Silverstone) irrevocably and unconditionally,
6    A, as principal obligor guarantees to the Buyers the prompt
7    performance by (YTS) of all its obligations under the
8    Contract...." Accordingly, the guarantee at issue here based
9    on longstanding Second Circuit law falls within the meaning of
10   maritime contracts.
11             Finally, with respect to defendant's argument that the
12   matter is not ripe, the arbitral award has ordered that the
13   payment be made and it has not yet been paid. Accordingly, the
14   matter is ripe with respect to the guarantor. In addition, it
15   is most frequently the case that Rule B attachments are used to
16   provide security for arbitral awards and that has been the use
17   here. Accordingly, defendants' motion to vacate the attachment
18   is denied.
19             THE COURT: Is there anything else today?
20             MR. CHALOS: Yes, your Honor, two points if I may.
21             THE COURT: Sir.
22             MR. CHALOS: We thank the Court for hearing us on an
23   expedited basis. We would first off like to make an
24   application to the Court to reduce the amount of security. On
25   page 14 of the award, the panel clearly sets forth that the

SOUTHERN DISTRICT REPORTERS, P.C.
(212) 805-0300

6

87N6NOBL

1    plaintiff was awarded $3,362,400 and no more as the words of
2    the panel. Here the amount of the order attachment is almost
3    double that. It is significantly more.
4              THE COURT: What is the story with the interest,
5    Mr. Chalos?
6              MR. CHALOS: According to the panel, it is 7.5 percent
7    beginning August 16, 2007. That is only one year's worth of
8    interest. Surely this can be resolved in the next, I would
9    assume, six months or so with the upcoming appellate deadlines.
10             THE COURT: Has anyone done the calculation of the
11   interest?
12             MS. OROZCO: I have, your Honor. But I would just
13   like to speak on that point. The panel awards the amount less
14   than we had sought in our application, but it also awards
15   interest 7.5 percent from the date of the default until it is
16   paid and it awards costs of arbitrator, not legal costs.
17             We have attached to date as outlined in my declaration
18   $4 million. It is paragraph 34 of my declaration at page 6.
19   We have not calculated the interest out for a year. What we
20   have done is calculated it out for three years, which is
21   normally what we undertake in anticipating appeals and that
22   sort of thing. If we allow for three years of interest,
23   security for three years of interest, plus the costs of the
24   Gafta arbitration, the security that we would be entitled to

Page 3

87N6NOBC
25    would be $4,225,000.
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

0                                                                          7

87N6NOBL
1          So we are at this time undersecured by 200,000.
2     However, if the Court wants us to reevaluate the interest, we
3     would be willing to do so and then release the funds
4     accordingly if that was a proper analysis.
5               THE COURT:  Counsel.
6               MR. CHALOS:  Those calculations are flawed.  Those
7     calculations are based on the principal claim of 3.9 million.
8     That is not what the panel awarded.  7.5 percent on the $3.3
9     million award is about, 21 to $210,000.
10              MS. OROZCO:  I actually calculated the three-year
11    interest on the amount awarded by the arbitrators, which was
12    $3,362,400.  And the interest from August 15th, 2007 through
13    August 15th, 2010 is $840,000.
14              MR. CHALOS:  I submit through 2010 is a bit long.  I
15    can certainly understand maybe two years, but not three.
16              Also, seeing as they are already secured from the
17    guarantor's EFTs, I renew my application and dismiss the matter
18    against YTS.  They are secured or they are not secured.  They
19    have it already attached.  There is no in rem quasi
20    jurisdiction over the party whose funds who haven't been
21    attached.
22              THE COURT:  I don't hear counsel going out and seeking
23    further attachments here.
24              MR. CHALOS:  But they would, though.  That is the
25    point if they sought to move money.  In fact, in the papers
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

0                                                                          8

87N6NOBL
1     that counsel submitted last night, they said exactly that they
2     would do that.  If they wound up -- U.S. dollar transfers on
3     behalf of Yugtranszitservis came through New York, they would
4     catch that and release monies belonging to the guarantor.
5               THE COURT:  What do you say to that, counsel?
6               MS. OROZCO:  Was that a statement that we made.
7     That statement as made with respect to the application of the
8     New York CPLR in that case, which we didn't address and we say
9     we are not applied.  We actually have stopped serving the writ
10    of attachment in this case and we are no longing serving on any
11    of the defendants.
12              THE COURT:  First, I decline to reduce the amount.
13              Second, obviously counsel knows that plaintiff may not
14    be oversecured.  If, Mr. Chalos, you find that plaintiff is
15    attaching more than the four million two number -- is that the
16    total number?  Please remind me.
17              MS. OROZCO:  Yes.  The total number is comprised of
18    $3,362,400 of principal pursuant to the arbitration award
19    issued on July 4th, 2008, with the rate of interest calculated
20    at 7.5 percent which is also the rate awarded for three years
21    from August 15th, 2007 through August 15th, 2010.  The interest
22    on that amount is $840,501.
23              In addition, the arbitration award also allowed costs,
24    Gafta costs, to the plaintiff and the Gafta costs incurred were
25    23,000 U.S. dollars.  So the total security we would be
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

0                                                                          9

87N6NOBL

                              Page 4

87N6NOBC
```
 1    entitled to or we would be seeking is $4,225,901.
 2              THE COURT:  To the extent, Mr. Chalos, counsel
 3    attaches more than that, you let me know.
 4              MR. CHALOS:  Thank you, your Honor.
 5              Finally, your Honor, we would like to ask the Court to
 6    certify this for immediate appeal to the Second Circuit.
 7              THE COURT:  I will take a letter on that.
 8              How is this a complex or novel issue?
 9              MR. CHALOS:  Well, it is a novel issue in the sense
10    that the Court has for the first time found a Gafta contract to
11    be within the meaning of a maritime contract and a maritime
12    claim under Rule B.  It stands starkly in contrast to Judge
13    Daniels' decision as to Aston Agro as well as Judge Sullivan, I
14    am not sure about that, in the Tan Shan case.  These exact
15    arguments were presented there with a 180-degree different
16    result and I do believe that if we can bring this to a head
17    Second Circuit level promptly that would help provide some
18    clarity on these types of issues.
19              THE COURT:  The law is not in doubt.  It is the
20    application, right?
21              MR. CHALOS:  Well, I think the law is in doubt in a
22    sense that our position is that the Court needs to look to the
23    primarily objective of the contract.  Our argument has been
24    that the primary objective of the contract is one of sale and
25    purchase.
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

0                                                                    10

87N6NOBL
```
 1              THE COURT:  I didn't see any of the Second Circuit
 2    cases talking about the primary objective of the contract.
 3              MR. CHALOS:  Well, I think we set out the argument
 4    based on the precedent of Judge Daniels' decision, which can be
 5    found for the Court's reference on page 3 of the Aston Agro
 6    decision where he writes, In this case the contracts are not
 7    maritime contracts because they are primary objective was not
 8    the transportation of goods by sea.  Instead, their primary
 9    objective was undoubtedly the sale of wheat.  That the wheat
10    was transported on a ship does not make the contracts maritime
11    contracts anymore than it would make them aviation contracts
12    had the wheat been shipped via airplane.  Nor would the
13    contracts between a seller and shipper -- that is true here.
14    the judge in that matter goes on to write, Nor can maritime
15    jurisdiction be exercised under an exception to the general
16    rule that maritime jurisdiction "Arises only when the subject
17    matter of the contract is purely or wholly maritime in nature.
18    Under the first exception, federal court can exercise --
19              THE COURT:  Counsel, do you want this taken down?  If
20    you do, you better read so the court reporter can take it down.
21              MR. CHALOS:  The Court has it before it.
22              THE COURT:  So you don't need to read it.
23              MS. OROZCO:  May I respond?
24              THE COURT:  Yes, ma'am.
25              MS. OROZCO:  The key to the quotes by defendant from
```
                    SOUTHERN DISTRICT REPORTERS, P.C.
                              (212) 805-0300

0                                                                    11

87N6NOBL
```
 1    the Ashon Agro case is the first line where it says, "In this
 2    case." and further or in the quote Judge Daniels says that
 3    based on the facts of that particular case they are not within
 4    the maritime jurisdiction.
 5              I would just like to point out that the Exxon case,
```
                                Page 5

87N6NOBC
6  500 U.S. 603, 612 reminds us -- this is the U.S. Supreme
7  Court -- reminds us that courts are required to look to the
8  subject matter of the relevant contract. And in this case the
9  relevant contract, the Noble YTS contract, provides maritime
10  jurisdiction.
11        MR. CHALOS: Your Honor, this is the shifting sands
12  that I have been arguing again. The Court is required to look
13  to the nature of the contract, not the dispute. Twenty minutes
14  ago counsel was arguing the Court needs to look to the dispute
15  and I rejected that. The contract is a sale and purchase
16  contract, not a maritime contract. It is not maritime contract
17  with third parties. We had nothing do with it. My clients had
18  nothing to do with it. That is the dispute here. If you look
19  to the nature and substance of the contract, we are selling and
20  they are buying. Full stop. It is the sale and purchase
21  contract.
22        In fact, your Honor, that was precisely what was
23  addressed by Judge Daniels. He writes here invoking the first
24  exception, Aston contends that maritime jurisdiction exists
25  because the particular claims at issue involve only the
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

☐                                                                12

87N6NOBL
1  maritime portions of the contracts, and it was rejected, which
2  is precisely the argument presented by plaintiff. Our
3  opposition is precisely the argument adopted by Judge Daniels.
4        THE COURT: The Court denies the request for
5  certification under 28, U.S.C., Section 1292(b). The
6  controlling law is not at all at issue in this case. Everyone
7  agrees on the cases that should be looked to for guidance. The
8  only dispute is the application of those cases to the facts of
9  this case as opposed to the facts of other cases. Accordingly
10  certification for immediate appeal is denied.
11        Anything else, counsel?
12        MR. CHALOS: Nothing further, your Honor.
13        THE COURT: Thank you, ladies and gentlemen. Thank
14  you for your excellent arguments.
15                        o0o
16
17
18
19
20
21
22
23
24
25
                SOUTHERN DISTRICT REPORTERS, P.C.
                        (212) 805-0300

☐