BLANK ROME LLP
Attorneys for Defendant
Jeremy J.O. Harwood (JH 9012)
LeRoy Lambert (LL 3519)
405 Lexington Avenue
The Chrysler Building
New York, NY 10174
(212) 885-5000

UNITED STATES DISTRICT COURT
SOUTHERN DISTRICT OF NEW YORK

|  |  |
|---|---|
| EXIM GRAIN TRADE B.V.,<br><br>Plaintiff,<br><br>- against -<br><br>J.K. INTERNATIONAL PTY LTD.,<br><br>Defendant. | 08 CIV 6989 (WHP) |

## REPLY MEMORANDUM OF LAW IN SUPPORT OF MOTION TO VACATE ORDER OF MARITIME ATTACHMENT AND GARNISHMENT OBTAINED UNDER SUPPLEMENTAL RULE B OF THE SUPPLEMENTAL RULES OF F. R. CIV. P. FOR CERTAIN ADMIRALTY AND MARITIME CLAIMS

*Jeremy J.O. Harwood*
*LeRoy Lambert*
*Blank Rome LLP*
*The Chrysler Building*
*405 Lexington Avenue*
*New York, NY 10174*
*(212) 885-5000*

601768.00602/6664851v.4

# TABLE OF CONTENTS

ARGUMENT ................................................................................................................1

POINT I...................................................................................................................1

    LACK OF ADMIRALTY JURISDICTION IS NOT DETERMINED BY THE
    SAME STANDARD FOR PLEADING A PRIMA FACIE RULE B
    COMPLAINT.......................................................................................................1

POINT II .................................................................................................................2

    THE "PRIMARY OBJECTIVE" OF THE SALES CONTRACT NOT THE
    "SUBJECT MATTER OF THE DISPUTE" DETERMINES WHETHER IT IS A
    MARITIME CONTRACT ....................................................................................2

POINT III ................................................................................................................4

    THE "SUBJECT MATTER OF A DISPUTE" ONLY DETERMINES THE
    SECOND CIRCUIT'S "THRESHOLD INQUIRY" AND DOES NOT IN ITSELF
    ESTABLISH ADMIRALTY JURISDICTION WHERE THE PRINCIPAL
    PURPOSE OF A CONTRACT IS NOT MARITIME.............................................4

POINT IV ................................................................................................................5

    THE "THRESHOLD" TEST IS NOT MET.............................................................5

POINT V .................................................................................................................6

    THE SALES CONTRACT DOES NOT FIT WITHIN THE SEVERABILITY
    EXCEPTION........................................................................................................6

CONCLUSION ........................................................................................................8

## TABLE OF AUTHORITIES

### FEDERAL CASES

*Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd.*, 460 F.3d 434 (2d Cir. 2006)...............................................................................................................1

*Armour & Co. v. Fort Morgan Steamship Co.*, 270 U.S. 253 (1926)...................1, 7

*Aston Agro-Industrial AG v. Star Grain Ltd.*, 2006 U.S. Dist. LEXIS 916369 (S.D.N.Y. December 20, 2006) .........................................................4,7,8

*Exxon Corp v. Central Gulf Lines, Inc.*, 500 U.S. 603 (1991)...................................4

*F.H. Bertling Holding KG v. Ranhill Engineers & Construction SDN, BHD*, 2008 U.S. Dist. LEXIS 52085 (S.D.N.Y. July 9, 2008) ...........................5

*Folksamerica Reinsurance Co. v. Clean Water of N.Y. Inc.*, 413 F.3d 307 (2d Cir. 2005) ...................................................................................................4, 6

*Hartford Fire Insurance Co. v. Orient Overseas Container Lines (UK) Ltd.*, 230 F.3d 549 (2d Cir. 2000) ...................................................................................6

*Laredo Offshore Constructors, Inc. v. Hunt Oil Co.*, 654 F.2d 1223 (5th Cir. 1985)...........................................................................................................7

*Luckenbach S.S. Co. v. Gano Moore Co.*, 298 Fed. 343, 344, (2d Cir. 1923) (L. Hand, J.), rev'd in part on other grounds, 298 Fed. 344 (2d Cir. 1924)...............................................................................................................7

*Lucky-Goldstar International (America) Inc. v. Phibro Energy International, Ltd.*, 958 F.2d 58 (5th Cir. 1992) ...................................................7

*Norfolk Southern Railway Co. v. Kirby*, 543 U.S. 14 (2004) ...............................3, 4

*North Pacific S.S. Co. v. Hall Brothers Maritime Railway & Shipbuilding Co.*, 249 U.S. 119 (1919).......................................................................................3

*Shanghai Sinom Import & Export v. Exfin (India)*, 2006 AMC 2950, 2951-2952 (S.D.N.Y. 2006)........................................................................................8

ii

Defendant J.K. INTERNATIONAL PTY LTD ("JKI")[1] respectfully submits this reply memorandum of law in support of its motion to vacate Exim's attachment of $1,508,267.70 and dismiss the Complaint for lack of admiralty jurisdiction.

## ARGUMENT

### POINT I

### LACK OF ADMIRALTY JURISDICTION IS NOT DETERMINED BY THE SAME STANDARD FOR PLEADING A PRIMA FACIE RULE B COMPLAINT

Exim's opposition begins by claiming that it has met its "burden of alleging a cognizable claim in admiralty as required under Rule B ...". Id. at 1. Its discussion, in Point I of its Opposition,[2] fails to recognize that the issue of jurisdiction is not determined by the standard for withstanding a Rule E challenge based on the claim asserted, but on its jurisdictional underpinnings. In the former, a Rule B complaint need only show a "prima facie admiralty claim." Aqua Stoli Shipping Ltd. v. Gardner Smith Pty. Ltd., 460 F.3d 434, 445 (2d Cir. 2006).

A jurisdictional challenge is wholly different. In Armour & Co. v. Fort Morgan Steamship Co., 270 U.S. 253, 259 (1926) Mr. Justice Brandeis noted that "Jurisdiction in admiralty cannot be effectively acquired by concealing for a time the facts which establish that it does not exist [citation omitted]. We must, therefore, determine whether the facts developed after the filing of the libel preclude the exercise of admiralty

---

[1]    Definitions are taken from JKI's opening brief.
[2]    Opposition memorandum dated August 26, 2008 ("Opp.").

jurisdiction." As recently stated in <u>Williamson, et al., v. Recovery Limited Partnership,</u>

(2d Cir. August 22, 2008) (Appendix A hereto):

> . . . because pre-judgment attachment is such a severe remedy, it is important to first determine whether a contract is, in fact, a maritime contract warranting maritime attachment.

Appendix A, at 7-8.

Accordingly, the Court must look at the "principal objective" of the Sales

Contract. Exim fails to address the issue. It concludes:

> . . . the subject matter of the <u>dispute</u> before this Court falls within its admiralty jurisdiction.

Opp. at 8. (emphasis added)

In relying on the Second Circuit's "threshold inquiry," Exim has failed to carry its

burden to establish the Court's admiralty jurisdiction.

### POINT II

### THE "PRIMARY OBJECTIVE" OF THE SALES CONTRACT NOT THE "SUBJECT MATTER OF THE DISPUTE" DETERMINES WHETHER IT IS A MARITIME CONTRACT

Exim repeatedly argues that the breach of the Sales Contract was failure to provide

"the proper type Vessel" (Opp. at 5); "adequate Vessel under the contract" (<u>Id</u>. at 61;

"provide a Vessel to load its Cargo," (<u>Id</u>.); "provide a Vessel to load its cargo that was

adequate to make only one shipment," (<u>Id</u>. at 7); "provide an adequate Vessel to make

one lifting of the cargo." <u>Id</u>. at 8). The truth is that the GAFTA arbitration is in respect

of JKI's alleged failure "to arrange [the] taking of the balance ... of the goods". Gafta

Claim, ¶ 12.

Moreover, in <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14, 23-24 (2004)

the Supreme Court recognized that in a contract dispute "we cannot look to whether a

ship or other vessel was involved in the dispute as we would in a putative maritime tort

case" nor "simply look at the contract's formation or place of performance":

> . . . Instead, the answer "depends upon ... the nature and character of the contract," and the true criterion is whether it has "reference to maritime service or maritime transactions." <u>North Pacific S.S. Co. v. Hall Brothers Maritime Railway & Shipbuilding Co.</u>, 249 U.S. 119, 125 (1919) [other citations omitted].

The Court therefore held:

> The ICC and Hamburg Süd bills are maritime contracts because their primary objective is to accomplish the transportation of goods by sea form Australia to the eastern coast of the United States. [citation omitted]

> \* \* \*

> The conceptual approach vindicates that interest by focusing our inquiry on whether the principal objective of a contract is maritime commerce.

543 U.S. at 24-25.

In its transparent attempt to make the GAFTA Claim a dispute about a "vessel",

Exim ignores this issue entirely. Its argument for the Court's admiralty jurisdiction is

made under the heading "The Dispute . . . Falls Within This Court's Admiralty And

Maritime Jurisdiction" (Opp. at 3) without any discussion whatsoever as to the "principal

objective" of the Sales Contract.

3

As in <u>Aston Agro-Industrial AG v. Star Grain Ltd.</u>, 2006 U.S. Dist LEXIS 91636*9 (S.D.N.Y. December 20, 2006), the Sales Contract's "primary objective was, undoubtedly, the sale of wheat."

### POINT III

**THE "SUBJECT MATTER OF A DISPUTE" ONLY DETERMINES THE SECOND CIRCUIT'S "THRESHOLD INQUIRY" AND DOES NOT IN ITSELF ESTABLISH ADMIRALTY JURISDICTION WHERE THE PRINCIPAL PURPOSE OF A CONTRACT IS NOT MARITIME**

Exim's generalized discussion of admiralty jurisdiction and the controlling authorities, <u>Norfolk Southern Railway Co. v. Kirby</u>, 543 U.S. 14 (2004); <u>Exxon Corp v. Central Gulf Lines, Inc.</u>, 500 U.S. 603 (1991) and <u>Folksamerica Reinsurance Co. v. Clean Water of N.Y. Inc.</u>, 413 F.3d 307 (2d Cir. 2005) completely misses the point.

The Supreme Court in <u>Norfolk</u>, <u>supra</u>, stated the test for maritime contracts/admiralty jurisdiction without any discussion of a "threshold inquiry." As <u>Folksamerica</u>, 413 F.3d at 314, acknowledged, "the absence of any discussion by the Supreme Court of a 'threshold inquiry' akin to that found in our precedents is notable." Nevertheless, that decision stated "[w]e simply highlight this discrepancy and leave for a more appropriate case the question of how [<u>Norfolk</u>] might circumscribe our 'threshold inquiry' doctrine, if at all." <u>Id</u>.

The fact that Judge Pooler in <u>Williamson</u>, who also was on the panel of <u>Folksamerica</u>, did not mention the "threshold inquiry" in determining the maritime "nature and character" of the contracts at issue there suggests that the inquiry does not

4

precede nor is it a part of the Supreme Court's test based on the "primary" or "principal" objective" of the parties' agreement.

POINT IV

**THE "THRESHOLD" TEST IS NOT MET**

As discussed, arguendo, by Judge Scheindlin in F.H. Bertling Holding KG v. Ranhill Engineers & Construction SDN, BHD, 2008 U.S. Dist. LEXIS 52085 *13 (S.D.N.Y. July 9, 2008):

> The threshold inquiry examines the subject matter of a dispute, as opposed to the underlying contract, to determine if "an issue related to maritime interests has been raised." [emphasis added]

Exim claims that the Sales Contract dispute provides subject matter jurisdiction without recognizing that this is simply the questionable "threshold inquiry":

> In this case, it is clear that the subject matter of the ***dispute*** directly relates to maritime interests.

*    *    *

> In this case, the subject matter of the dispute - seeking security for a pending arbitration for losses related to the Vessel - clearly implicates the business of maritime commerce.

Opposition at 6-7 (emphasis in original).

As set forth in Exim's GAFTA Claim, the subject matter of the dispute is JKI's alleged wrongful failure to take "the balance of 12,220.00 mt of the Goods." (Ex. 2, ¶ 12.) Exim's claims are for the price difference and land storage, not for anything to do with maritime transport. The same "dispute" would have arisen whether a truck, plane or

5

wheelbarrow was involved. Exim ignores the Sales Contract's term by which "the buyer has to bear all costs and risks of loss of or damage to the goods from that point":[3]

> FOB stowed and trimmed
> Novorossiysk

Even if, which is denied, the Sales Contract dispute is not sufficiently attenuated from maritime commerce so as to implicate concerns lying within admiralty jurisdiction that is the first inquiry, not the last. As discussed below, the next step across the threshold is a determination whether Exim can claim maritime jurisdiction under the severability exception, which it cannot.

## POINT V

### THE SALES CONTRACT DOES NOT FIT WITHIN THE SEVERABILITY EXCEPTION

An exception to the rule that "mixed" contracts do not give rise to admiralty jurisdiction is, as stated in Folksamerica, 413 F.3d at 314, where "the claim arises from a breach of maritime obligations that are severable from the non-maritime obligations of the contract" (citing Hartford Fire Ins. Co. v. Orient Overseas Container Lines (UK) Ltd., 230 F.3d 549, 555 (2d Cir. 2000)).

Exim claims that JKI fails to address the "severable portions of the contract giving rise to admiralty jurisdiction" Id. at 3. It claims the "breach" of the Sales Contract was the breach of the "maritime portions" of it. Id. It further claims that the "maritime transportation was integral to the agreement" and that "maritime transportation ... was a requirement of performance by Defendant ..." Id. at 5. As noted above, this is sophistry.

---

[3]     Incoterm at www.iccwbo.org/incoterms.

6

The failure to take the balance of the goods, not to transport them away by ship is the alleged contractual breach.

Exim distinguishes <u>Lucky-Goldstar Int'l (America) Inc. v. Phibro Energy International, Ltd.</u>, 958 F.2d 58, 59 (5th Cir. 1992) based on its "principal purpose" holding. Given that the "principal purpose" of the Sales Contract is also the "land-based sale" of wheat FOB, Exim's attempt to dismiss the case is unconvincing. This is especially so given that the claim there was for delay by the vessel and co-mingling with another parcel (cargo) while on board. <u>Id</u>. at 59. Exim ignores the cases cited by the Fifth Circuit: <u>Armour & Co. v. Fort Morgan Steamship Co.</u>, 270 U.S. 253, 259, (1926); <u>Laredo Offshore Constructors, Inc. v. Hunt Oil Co.</u>, 654 F.2d 1223, 1231-32 (5th Cir. 1985); <u>Luckenbach S.S. Co. v. Gano Moore Co.</u>, 298 Fed. 343, 344, (2d Cir. 1923) (L. Hand, J.), <u>rev'd in part on other grounds</u>, 298 Fed. 344 (2d Cir. 1924).

Its attempt to distinguish <u>Aston Agro-Industrial AG v. Star Grain Ltd.</u>, 2006 U.S. Dist. LEXIS 91636 (S.D.N.Y.)(Daniels, J.), on the purported basis that "the case had nothing to do with any maritime obligations of the wheat contract" (Opp. at 7) is incorrect. There Aston similarly claimed that "the maritime transportation of the wheat was integral to the contracts between the parties." <u>Id</u>. at *5. In fact, the underlying claim was for vessel demurrage based on "Star Grain's behavior in insisting on the fact that the vessel should not sail until cash was received in their hands ..." <u>Id</u>. at *4. Nevertheless, Judge Daniels held:

> The contracts create no maritime obligations on Star Grain, however, let alone any maritime obligations that are severable from the non-maritime obligations. Rather, <u>Star Grain's only</u>

7

> obligations under the contracts were to pay the agreed-upon
> price pursuant to the stipulated payment terms, and to begin
> discharging the wheat when the ships arrived in port even if
> the ships arrived before the bills of lading were received.

Id. at *13. (emphasis added)

Under an FOB Sales Contract that is the case here. Likewise, in Shanghai Sinom

Import & Export v. Exfin (India), 2006 AMC 2950, 2951-2952 (S.D.N.Y. 2006) although

"the alleged breach here was a breach wholly of the sale of goods provisions of the

contract" the same is true for the Sales Contract. Like it or not, Exim cannot create a new

basis for obtaining Rule B attachments by counsel's artful pleading that ignores

established precedent and, in seeking such ex parte relief, fails even to advise the Court

of the issue and contrary cases from the same district.

## CONCLUSION

Defendant respectfully requests that the Court order that the PMAG be vacated

and the Complaint dismissed for lack of admiralty jurisdiction and for such other relief as

is fair and equitable and as requested herein.

Date:    New York, New York
         August 28, 2008

                            Respectfully submitted,

                            BLANK ROME LLP

                    By:     _Jeremy J.O. Harwood_____
                            Jeremy J.O. Harwood
                            405 Lexington Avenue
                            New York, New York 10174
                            (212) 885-5000
                            *Attorneys for Defendant*

8

# APPENDIX A

07-0548-cv(L)
Williamson v. Recovery Limited Partnership

## UNITED STATES COURT OF APPEALS

### FOR THE SECOND CIRCUIT

August Term 2007

(Argued: May 15, 2008                                    Decided: August 22, 2008)

Docket Nos. 07-0548-cv(L), 07-0746-cv(XAP)

MICHAEL WILLIAMSON, ESTATE OF DON C. CRAFT, KIRK O'DONNELL, JOHN
LETTOW, TIMOTHY MCGINNIS, FRED NEWTON, WILLIAM WATSON, CHRIS
HANCOCK, DALE SCHOENEMAN, AND INTERNATIONAL DEEP SEA SURVEY, INC.,

Plaintiffs-Appellees-Cross-Appellants,

v.

RECOVERY LIMITED PARTNERSHIP, COLUMBUS EXPLORATION, LLC, COLUMBUS-
AMERICA DISCOVERY GROUP, INC., OMNI ENGINEERING, INC., OMNI
ENGINEERING OF OHIO, INC., ECONOMIC ZONE RESOURCE ASSOCIATES,
ECONOMIC ZONE RESOURCE ASSOCIATES, LTD., EZRA, INC., EZRA OF OHIO, INC.,
ECON ENGINEERING ASSOCIATES, INC., DOE E., INC., THOMAS G. THOMPSON,
GILMAN D. KIRK, JAMES F. TURNER, MICHAEL J. FORD, AND W. ARTHUR
CULLMAN,

Defendants-Appellants-Cross-Appellees.

Before: CARDAMONE, MINER, and POOLER, Circuit Judges.

1

> William M. Mattes, Dinsmore & Shohl, LLP, Columbus, OH, and William
> G. Ballaine, Landman Corsi Ballaine & Ford, P.C., New York, NY, for
> Defendants-Appellants-Cross-Appellees Thompson, Kirk, Turner, Ford
> and Cullman.
>
> Richard T. Robol and Melanie L. Frankel, Robol Law Office, LPA,
> Columbus, OH, for Defendants-Appellants-Cross-Appellees Recovery
> Limited Partnership, Columbus Exploration, LLC, Columbus-America
> Discovery Group, Inc., Columbus Exploration Limited Partnership, Omni
> Engineering, Inc., Omni Engineering of Ohio, Inc., Economic Zone
> Resource Associates, Economic Zone Resource Associates, Ltd., EZRA,
> Inc., EZRA of Ohio, Inc., ECON Engineering Associates, Inc., DOE.E,
> Inc.
>
> James T. Shirley, Jr. and Michael J. Frevola, Holland & Knight, LLP, New
> York, NY, for Plaintiffs-Appellees-Cross-Appellants

POOLER, Circuit Judge:

On March 31, 2006, Plaintiffs filed a civil action in the Court of Common Pleas for

Franklin County, Ohio, arising out of the same set of facts and circumstances as in this case. On

April 24, 2006, Defendants removed the suit to the United States District Court for the Southern

District of Ohio on the ground that the dispute was over a maritime contract and thus was

governed by federal law. On July 28, 2006, Plaintiffs filed this civil action in the Southern

District of New York (Swain, J.), alleging that each Plaintiff had a maritime claim against the

Defendants. On the same day, Plaintiffs obtained an ex parte attachment order, invoking

Supplemental Admiralty Rule B ("Rule B"). FED. R. CIV. P., ADM. SUPP. RULE B. On October

18, 2006, the Defendants moved to vacate the attachment. On January 16, 2007, the district court

below issued its decision, which 1) vacated the attachment as to the individual Defendants other

2

than Thomas G. Thompson, and 2) denied vacatur as to Defendants Economic Zone Resources

Associates, Inc. ("EZRA"), Recovery Limited Partnership ("RLP"), and Columbus Exploration,

LLC ("CXLLC"), but vacated the attachments as to the remaining Defendants, and 3) denied the

individual Defendants' requests for an award of compensation, costs, and fees for the wrongful

attachment. Defendants appeal the district court's decision, arguing that the district court erred

in finding: (1) that the contracts between Plaintiffs and Defendants are maritime contracts, (2)

that the notice requirements of Rule B were met, (3) that equitable factors did not weigh in favor

of vacating the maritime attachments, and (4) that a Rule 11 hearing was not required. Plaintiffs

cross-appeal the district court's decision to vacate the maritime attachments against all

Defendants, except Thomas G. Thompson, EZRA, RLP, and CXLLC. Because we agree with all

of the district court's determinations, we AFFIRM the judgment of the district court.

## BACKGROUND

### I. Procedural Background

On March 31, 2006, Plaintiffs filed a civil action in the Court of Common Pleas for

Franklin County, Ohio, over the alleged nonpayment of contracts entered into between Plaintiffs

and Defendants in connection with the search for the shipwreck *S.S. Central America* in the

1980s. Plaintiffs are individuals who contracted to participate in the *S.S. Central America* search

and recovery efforts and a company that supplied side scan sonar equipment to one of the

Defendant corporations. Defendants are individuals who were, or allegedly were, parties to

certain contracts or are, or were, directors or officers of one of the Defendant corporations, and

3

several corporations that were allegedly responsible for, and involved in, the search and recovery operation, and the alleged successors and alter-egos of those companies. On April 24, 2006, Defendants removed the suit to the United States District Court for the Southern District of Ohio on the ground that the dispute was over a maritime contract and thus was governed by federal law. On July 28, 2006, Plaintiffs filed this civil action in the Southern District of New York (Swain, J.), alleging that each Plaintiff had a maritime claim against the Defendants. Plaintiffs immediately obtained an ex parte order for the issuance of a writ of attachment pursuant to Rule B of the Supplemental Rules for Certain Admiralty and Maritime Claims ("Supplemental Rules"). FED. R. CIV. P., ADM. SUPP. RULE B. On October 18, 2006, the Defendants moved, through an order to show cause, to vacate the writ and the attachment achieved under the writ, to dismiss the complaint, and for attorneys' fees and costs incurred in connection with the application. The district court, pursuant to Rule E of the Supplemental Rules, heard arguments on the matter and received pre-and post-hearing briefs and evidentiary submissions. FED. R. CIV. P., ADM. SUPP. RULE E(4)(f). On January 16, 2007, the district court issued its decision, which (1) vacated the attachment as to the individual Defendants other than Thomas G. Thompson, and (2) denied vacatur as to Defendants EZRA, RLP, and CXLLC, but vacated the attachments as to the remaining corporate Defendants, and (3) denied the Defendants board members' request for an award of compensation, costs, and fees for the wrongful attachment. Defendants timely filed their notice of appeal, and Plaintiffs cross-appealed the district court's decision to vacate certain attachments.

## II. Facts

Plaintiffs assisted Defendant Thompson, at various times between 1986 and 1988, in the location and recovery of the *S.S. Central America*, a United States Mail steamship that sank off the coast of South Carolina in 1857. As part of the compensation offered to Plaintiffs for their assistance on the project, Plaintiffs and Thompson entered into non-disclosure and non-compete agreements that gave Plaintiffs rights to a fraction of a percentage of the total recovery of the shipwreck -- i.e., the gross value of gold, silver, and valuable artifacts recovered from the shipwreck. The individual Plaintiffs were members of Defendant Thompson's "team" that first imaged the *S.S. Central America* in 1986, confirmed that the wreck was in fact the *S.S. Central America* in 1988, and recovered the gold, silver, and other artifacts from the ship. Additionally, Plaintiffs allege that one of the Plaintiffs, International Deep Sea Survey, Inc. ("IDSS"), leased a side sonar to one of the Defendants, Recovery Limited Partnership ("RLP"), in 1986. As part of the agreement between IDSS and RLP, IDSS also agreed to be compensated, in part, based on the percentage of the net recovery of the operation.

In May 1987, the United States District Court for the Eastern District of Virginia ordered the arrest of the ship, took constructive possession of the ship and everything on it, and entered an order requiring any person asserting an interest in the *S.S. Central America* to file a claim before the 1992 cut-off date. At present, all of the litigation concerning the *S.S. Central America* in the Eastern District of Virginia has been completed; Defendants have obtained their portion of the treasure and have sold it. Throughout this process, Defendants wrote letters to Plaintiffs assuring them that Plaintiffs would receive their share of the total recovery after

5

Defendants completed the process of selling the treasure. However, as time passed, Plaintiffs realized that the sale of the treasure had, in fact, been completed, and that nonetheless Defendants still had not compensated Plaintiffs. The lawsuit in the Court of Common Pleas in Ohio followed.

Despite the fact that gold and valuables were certainly recovered from the *S.S. Central America*, it is undisputed that Defendants have never provided Plaintiffs with any percentage of the total recovery. Plaintiffs allege that Defendants have therefore violated the contracts between Plaintiffs and Defendants and that Plaintiffs are owed a portion of the total recovery. Defendants, on the other hand, argue that, while gold and valuables were certainly found on the ship, the recovery efforts did not actually provide a return to the initial investors, much less a profit, and that Defendants therefore have not violated their contract with Plaintiffs. Furthermore, Defendants argue that Plaintiffs erred in failing to bring their claims before the Eastern District of Virginia and that the Plaintiffs are bound by the prior orders and decrees of the district court in Virginia.

## DISCUSSION

Defendants' appeal raises numerous issues. First, Defendants argue that the contracts between Defendants and Plaintiffs are not maritime contracts, and therefore (1) federal jurisdiction does not apply, and (2) prejudgement attachment is not proper in New York, given that the primary proceeding is pending in Ohio. Second, assuming the contracts are maritime contracts, Defendants argue that the Plaintiffs failed to comply with the requirements of notice

and personal service for Rule B attachments. Third, again assuming the contracts are maritime contracts, Defendants argue that the ex parte maritime attachments of certain Defendants' assets were improper in view of the equitable circumstances of the case. Fourth, Defendants argue that the district court erred in refusing to hold a hearing, pursuant to Rule 11 of the Federal Rules of Civil Procedure, to determine whether Plaintiffs should be sanctioned for filing the ex parte attachment order. Fifth, on cross-appeal, Plaintiffs argue that the district court erred in vacating the attachments against all Defendants except Thompson, EZRA, RLP and CXLLC.

We review a district court's decision to vacate a maritime attachment for abuse of discretion; however, we review de novo any legal determinations on which this discretion rests. Aqua Stoli Shipping Ltd. v. Gardner Smith Pty Ltd., 460 F.3d 434, 439 (2d Cir. 2006).

## I. The Contracts are Maritime Contracts

Maritime attachment is a prejudgement mechanism used by parties in admiralty cases to secure jurisdiction over an absent party and to obtain security for potential judgment where the absent party's assets are transitory. Id. at 436. Maritime attachment is a unique aspect of admiralty jurisprudence that has deep historic and constitutional roots. Id. at 437-38.

Maritime attachments arose because it is frequently, but not always, more difficult to find property of parties to a maritime dispute than of parties to a traditional civil action. Maritime parties are peripatetic, and their assets are often transitory. Thus, the traditional policy underlying maritime attachment has been to permit the attachments of assets wherever they can be found and not to require the plaintiff to scour the globe to find a proper forum for suit or property of the defendant sufficient to satisfy a judgment.

Id. at 443 (citations omitted). However, because prejudgement attachment is such a severe remedy, it is important to first determine whether a contract is, in fact, a maritime contract

7

warranting maritime attachment. We review de novo the district court's conclusion that the

contracts at issue are maritime contracts. Id. at 439.

Because the case law regarding the distinction between maritime and non-maritime

contracts was somewhat confused, the Supreme Court clarified, in Norfolk Southern Railway

Company v. James N. Kirby Pty, Ltd., 543 U.S. 14 (2004), the appropriate approach for making

such a determination.

> To ascertain whether a contract is a maritime one, we cannot look to whether a ship or
> other vessel was involved in the dispute, as we would in a putative maritime tort case.
> Nor can we simply look to the place of the contract's formation or performance. Instead,
> the answer depends upon . . . the nature and character of the contract, and the true
> criterion is whether it has reference to maritime service or maritime transactions.

Norfolk S. Ry. Co., 543 U.S. at 23-24 (internal quotation marks and citations omitted). In accord

with the Supreme Court's ruling in this case, we recently amended our jurisprudence on maritime

contracts, recognizing that the proper inquiry is "whether the principal objective of a contract is

maritime commerce, rather than . . . whether the non-maritime components are properly

characterized as more than 'incidental' or 'merely incidental' to the contract." Folksamerica

Reinsurance Co. v. Clean Water of N.Y., Inc., 413 F.3d 307, 315 (2d Cir. 2005) (internal

quotation marks and citation omitted).

Here, the contracts reference maritime service or maritime transactions. The contracts

concern: non-compete agreements, whereby the hired workers promised not to work on the

waters off the shore of the Carolinas in exchange for a portion of the proceeds from a potential

recovery effort of a shipwreck in the ocean; non-disclosure agreements, whereby the hired

workers promised not to discuss the work they were doing on a ship in the Atlantic Ocean; and

8

the lease of equipment for use in the search for the *S.S. Central America* in the Atlantic Ocean. While the Defendants may be correct in stating that these are just standard non-compete, non-disclosure, and lease contract agreements, they are incorrect in arguing that the contracts are therefore not maritime contracts. As the Supreme Court explained, a conceptual analysis is appropriate. See Norfolk S. Ry. Co., 543 U.S. at 22-25. We must "focus[] our inquiry on whether the principal objective of a contract is maritime commerce," id. at 25, and we must look to the "nature and character of the contract," id. at 24. Here, the nature and character of these non-compete and non-disclosure agreements, as well as the agreement to provide technical equipment in exchange for a percentage of the recovery, are clearly "salty." Id. at 22. As the district court correctly found, the contracts at issue here "were by their terms entered into in connection with maritime commercial venture and are therefore maritime in nature; thus, the Court has jurisdiction of the claims brought thereunder pursuant to 28 U.S.C. § 1333." Williamson v. Recovery Ltd. P'ship, 2007 U.S. Dist. LEXIS 4438, at *6 (S.D.N.Y. Jan. 16, 2007).

Defendants also argue that the choice-of-law provision in the contracts, selecting Ohio law, governs the contracts such that they cannot be analyzed under maritime law.[1] Defendants misapprehend the state of the law. As the Supreme Court explained, the first step of the analysis is determining whether something is a maritime contract; then, once a contract has been deemed a maritime contract, the next step is determining whether a specific state's laws should be used to

---

[1] It is worth noting, as Plaintiffs-Appellees point out, that this argument seems particularly disingenuous, because it was Defendants, themselves, who initially removed this case from the Ohio Court of Common Pleas to federal district court on the ground that it involved a maritime contract and thus should be tried in federal court.

9

supplement any area of contract law for which federal common law does not provide. See Norfolk S. Ry. Co., 543 U.S. at 27 (emphasis added). The fact that a choice-of-laws provision exists in a contract does not, by itself, remove the contract from the scope of maritime law. We therefore affirm the district court's determination that the contracts at issue here are maritime contracts and that the dispute is properly in federal court.

## II. The Plaintiffs met the notice and service requirements necessary for a Rule B Attachment

Defendants next argue that even if the contracts are maritime contracts, and prejudgement attachment in New York is theoretically appropriate, the Plaintiffs here failed to meet the requirements for notice and service necessary under Rule B. We review de novo the district court's conclusion that the Plaintiffs complied with the requirements of Rule B. See Aqua Stoli, 460 F.3d at 439.

Because admiralty and maritime proceedings are such a unique aspect of United States law, the Supreme Court has been responsible for promulgating uniform rules to govern such proceedings. Id. at 438. Since these rules were first established in 1844, they have been revised and amended numerous times. Id. The process by which a party may attach another party's assets is currently governed by Rule B. "If a defendant is not found within the district . . . a verified complaint may contain a prayer for process to attach the defendant's tangible or intangible personal property -- up to the amount sued for -- in the hands of garnishees named in the process." FED. R. CIV. P., ADM. SUPP. RULE B(1)(a). Then, "[t]he court must review the

10

complaint and affidavit and, if the conditions of this Rule B appear to exist, enter an order so stating and authorizing process of attachment and garnishment. The clerk may issue supplemental process enforcing the court's order upon application without further court order." Rule B(1)(b). "The order of attachment may be requested and granted ex parte, though notice of the attachment to the defendant via appropriate service is required." Aqua Stoli, 460 F.3d at 438 (internal citations omitted).

Defendants argue that the order and writs of attachment should be vacated because Plaintiffs failed to give them prompt notice of the attachment as required by Rule B. However, as Plaintiffs explain in their brief, they made the Defendants aware of all the attachments as soon as they became aware of them. The district court further found that "the record demonstrates that notice of the actual attachment achieved pursuant to the writ has been given promptly upon Plaintiffs becoming aware of the attachment of particular assets. This is sufficient compliance with the notice requirement of Supplemental Rule B." Williamson, 2007 U.S. Dist. LEXIS 4438, at *7. Because we agree with the district court that Plaintiffs provided prompt notice to the Defendants, and therefore met the requirements of Rule B, we affirm the decision of the district court.

## III. The Attachments here are not subject to vacatur for equitable reasons under Aqua Stoli Shipping

Defendants argue that, assuming the contract is a maritime contract and that service and notice were proper, the attachments should be vacated for equitable reasons. We review a district

11

court's decision whether to vacate a maritime attachment order for abuse of discretion. Aqua
Stoli, 460 F.3d at 439.

After the requirements of Rule B have been met, and attachment has occurred, defendants
have the opportunity under Rule E(4)(f) to contest the attachment of their property before the
district court. FED. R. CIV. P., ADM. SUPP. RULE E(4)(f); Aqua Stoli, 460 F.3d at 438. Despite
our general policy of allowing maritime attachments, we have nonetheless found that, even when
a plaintiff meets the procedural requirements for obtaining a maritime attachment, the district
court may nonetheless vacate such an attachment for equitable reasons. "Rule E(4)(f) is designed
to satisfy the constitutional requirement of due process by guaranteeing to [the property owner] a
prompt post-seizure hearing at which [the property owner] can attack the complaint, the arrest,
the security demanded, or any other alleged deficiency in the proceedings." FED. R. CIV. P.,
ADM. SUPP. R. E(4)(f), Advisory Committee's Note to 1985 Amendment. We have elaborated
on the appropriate inquiry under Rule E(4)(f), explaining that an attachment should issue only if
a plaintiff establishes four factors: (1) that the plaintiff has a valid prima facie admiralty claim
against the defendant; (2) that the defendant cannot be found within the district; (3) that the
defendant's property may be found within the district; and (4) that there is no statutory or
maritime law bar to the attachment. Aqua Stoli, 460 F.3d at 445. We have stated that even if a
plaintiff satisfies the requirements of Rules B and E, vacatur is still appropriate in "other limited
circumstances." Id. For example, an attachment may be vacated if the defendant demonstrates
"at the Rule E hearing that 1) the defendant is subject to suit in a convenient adjacent
jurisdiction; 2) the plaintiff could obtain in personam jurisdiction over the defendant in the

12

district where the plaintiff is located; or 3) the plaintiff has already obtained sufficient security for the potential judgment, by attachment or otherwise." Id.

Plaintiffs met the requirements of Rules B and E as to Defendants Thompson, EZRA, RLP, and CXLLC. Furthermore, contrary to Defendants' assertions, Aqua Stoli does not support an argument that the district court abused its discretion in refusing to vacate these attachments on the additional grounds discussed in Aqua Stoli. These Defendants are not located in New York and thus are not subject to suit in a convenient adjacent jurisdiction. Moreover, Defendants have not demonstrated that they are subject to personal jurisdiction in the districts where the Plaintiffs are located and Plaintiffs have not yet obtained sufficient security for potential judgment. Furthermore, contrary to Defendants' assertions, a district court errs "when it relie[s] on a needs test and a hardship balancing" in evaluating whether a maritime attachment was equitable. Id. at 447. We therefore find that the district did not abuse its discretion in refusing to vacate the attachment for equitable reasons.


### IV. Defendants argument that a Rule 11 sanctions hearing was required is meritless

Rule 11(c) of the Federal Rules of Civil Procedures allows the court to sanction a party, if the court determines that the party has violated Rule 11(b) by making false, misleading, improper, or frivolous representations to the court. FED. R. CIV. P. 11. Under this rule, a district court may sanction a party sua sponte or in response to a motion for sanctions. FED. R. CIV. P. 11(c). "A motion for sanctions must be made separately from any other motion and must describe the specific conduct that allegedly violates Rule 11(b)." FED. R. CIV. P. 11(c)(2).

13

Because Defendants failed to make a separate motion for sanctions under Rule 11, and therefore failed to comply with the procedural requirements of the rule, the district court denied the Defendants' request for attorneys' fees, costs, and damages. Williamson, 2007 U.S. Dist. LEXIS 4438, at *13. On appeal, Defendants-Appellants acknowledge that they failed to meet the procedural requirements for a Rule 11 hearing. Nonetheless, Defendants argue that their failure to meet the procedural requirements should be ignored, because "this case presents unusual circumstances" and that "a separate Rule 11 motion would have been impractical and merely duplicative." They, however, cite no law to support such an argument, and we find no legal basis to support their argument. We therefore affirm the district court's decision that a Rule 11 hearing was not required, because the Defendants failed to meet the procedural requirements of Rule 11(c).

## V. The District Court did not abuse its discretion in deciding to vacate the marine attachment order as to certain Defendants

We review a district court's decision to vacate an attachment order for abuse of discretion. Aqua Stoli, 460 F.3d at 439. Here, the district court vacated the attachments as to certain Defendants, finding that Plaintiffs failed to make out a prima facie case as required under Rule B. The district court explained: "Plaintiffs' allegations regarding the liability of the other corporate entities are supported merely by generalized assertions in the attorney-verified complaint in this action, unsworn court filings in related actions, and documentation showing common business addresses and management. On this record, Plaintiffs' showing is insufficient

14

to make out the requisite prima facie admiralty claim based on the [non-disclosure agreements] against Defendants other than Thompson and . . . RLP, EZRA, and CXLLC." Williamson, 2007 U.S. Dist. LEXIS 4438, at *9-*10. Plaintiffs argue that the district court, in determining whether to vacate the attachment, engaged in an impermissible fact-intensive inquiry by looking beyond the requirements of Rule B. See Aqua Stoli, 460 F.3d at 447 (stating that a fact intensive "inquiry is improper because Rule B specifies the sum total of what must be shown for a valid maritime attachment").

Superficial compliance with Rule B, while necessary, is not sufficient in determining whether maritime attachment is appropriate Where a defendant contests an attachment of its property under Rule E(4)(f), plaintiffs must demonstrate at the Rule E hearing why the attachment should not be vacated. FED. R. CIV. P., ADM. SUPP. RULE E(4)(f). While Rule E(4)(f) does not explain under what circumstances the district court may vacate the judgment, and we have not yet had occasion to determine the full scope of a district court's vacatur power, Aqua Stoli, 460 F.3d at 445, the district court may certainly vacate the judgment if it determines, after hearing from both parties, that the requirements of Rule B have not actually been met. Id. Contrary to Plaintiffs' assertions, that is exactly what the district court did here. The district court did not engage in additional fact finding in the Rule E hearing, after determining that the requirements of Rule B and E had been met. Rather, the district court found that Plaintiffs failed to make out the prima facie case required under Rule B for certain Defendants. This is an entirely appropriate basis on which to vacate an attachment. See id.

The district court held that Plaintiffs failed to make out the requisite prima facie admiralty

15

claim against Defendants other than Thompson, RLP, EZRA and CXLLC. As to the other individual Defendants, the district court found that one statement made by Thompson in 1999 -- that he had the authority to speak for investors and partners, but not identifying the individuals to whom he referred -- "is insufficient to constitute the requisite Aqua Stoli showing of a prima facie admiralty claim against the defendants other than Thompson." Williamson, 2007 U.S. Dist. LEXIS 4438, at *9. The district court was also not persuaded by the Plaintiffs' additional evidence, a verified complaint by the Plaintiffs to this same effect, particularly because the individual Defendants also proffered affidavits in support of their vacatur application specifically denying any contractual relationship with the Plaintiffs and denying that Thompson was authorized to bind them. Id. We agree with the district court that this evidence is not sufficient to meet the requirements for a prima facie admiralty claim under Rule B. We therefore find that the district court did not abuse its discretion in vacating the attachments as to all individual Defendants other than Thompson.

Plaintiffs argued that other corporate entities, beyond RLP, EZRA, and CXLLC, were also liable to Plaintiffs under a theory of "piercing the corporate veil." See Kirno Hill Corp. v. Holt, 618 F.2d 982, 985 (2d Cir. 1980) (stating that the concept of "piercing a corporate veil" applies in the context of maritime law). "The prerequisites for piercing a corporate veil are as clear in federal maritime law as in shoreside law: [The individual] must have used [the corporate entity] to perpetrate a fraud or have so dominated and disregarded [the corporate entity]'s corporate form that [the corporate entity] primarily transacted [the individual]'s personal business rather than its own corporate business." Id. To determine whether an individual so

16

dominated and disregarded a corporate entity's corporate form, a court may consider several factors, including: "(1) the intermingling of corporate and personal funds, (2) undercapitalization of the corporation, and (3) failure to maintain separate books and records or other formal legal requirements for the corporation." William Wrigley Jr. Co. v. Waters, 890 F.2d 594, 600 (2d Cir. 1989) (citations omitted). There is no set rule as to how many of these factors must be present to warrant piercing the corporate veil and courts have considered additional factors as well. Id. at 600-01. Instead of a firm rule, the general principle guiding courts in determining whether to pierce the corporate veil "has been that liability is imposed when doing so would achieve an equitable result." Id. at 601.

The district court vacated the attachments as to these remaining corporate Defendants because it found that, again, the Plaintiffs failed to make out the requisite prima facie admiralty claims as to these Defendants. Williamson, 2007 U.S. Dist. LEXIS 4438, at *10. Specifically, the district court stated that "[p]laintiffs' allegations regarding the liability of the other corporate entities are supported merely by generalized assertions in the attorney-verified complaint in this action, unsworn court filings in related actions, and documentation showing common business addresses and management." Id. at *9. We agree with the district court and find that it did not abuse its discretion in vacating the attachments against these remaining corporate Defendants, based upon the evidence before it. As the district court noted, this decision does not mean that Plaintiffs' allegations, if proven, are insufficient to prove mismanagement, breach of duty to investors, and misuse of corporate entities as to these other corporate Defendants; rather, it means that the evidence provided to the district court is "insufficient at this stage to demonstrate

17

that Plaintiffs have the requisite prima facie admiralty claim against any defendants other than Thompson, EZRA, RLP and CXLLC." Id. at *12-*13.

Finally, the district court also dismissed an attachment insofar as it was based, in part, on a penalty wage claim asserted by the Estate of deceased Plaintiff Craft, pursuant to 46 U.S.C. § 10504, against Defendant Kirk. Id. at *11. Again, the district court found that the only evidence provided by Plaintiffs to support this theory -- a hearsay statement in a published book -- was not sufficient to make out a prima facie admiralty claim. We again agree with the district court and find that it did not abuse its discretion in vacating such an attachment on this evidence.

### *Conclusion*

For the foregoing reasons, we affirm the judgment of the district court.

18